UNITED STATES ET AL. *v.* LOS ANGELES & SALT LAKE RAILROAD COMPANY.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 414. Argued January 3, 4, 1927.—Decided February 21, 1927.

1. A " final " valuation of the property of a railroad by the Interstate Commerce Commission, pursuant to § 19a of the Act to Regulate

Commerce as amended, is merely the statement of the result of an investigation, and is not such an order as may be reviewed by a suit against the United States to annul and enjoin the use of such valuation or " order," under the Act of October 22, 1913, or under the general equity powers of the District Court.    Pp. 308, 314.

2. The statutory provision making such valuations *prima facie* evidence in all proceedings under the Act to Regulate Commerce, and in all judicial proceedings to enforce that Act or to enjoin, set aside, annul, or suspend, any order of the Commission, is not a violation of the due process clause of the Fifth Amendment justifying proceedings to annul the valuation order.    P. 311.

3. Paragraph (j) of § 19a, providing that " if upon the trial of any action involving a final value fixed by the Commission, evidence shall be introduced regarding such value which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto and substantially affecting the value," the proceedings shall be stayed so as to permit the Commission to consider the same and fix a final value different from that fixed in the first instance and to " alter, modify, amend or rescind any order which it has made involving such final value," does not refer to so-called orders fixing only valuations.    P. 312.

4 F. (2d) 736; 8 F (2d) 747, reversed.

APPEAL from a decree of the District Court, annulling and enjoining the use of a valuation of a railroad property made by the Interstate Commerce Commission. The suit was by the railroad against the United States. The Commission intervened.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Attorney General Sargent* was on the brief, for the United States.

The rule of *prima facie* evidence " is simply a rule changing the burden of proof."    The legislature has absolute control over such rules.    *Mobile R. R. Co.* v. *Turnipseed,* 219 U. S. 35; Wigmore, vol. 2, 2d ed., § 1356.    Sec. 16 of the Interstate Commerce Act provides for the use of the rule in reparation cases and this Court has sustained it.    *Meeker* v. *Lehigh Valley,* 236 U. S. 412; *Mills* v. *Lehigh Valley,* 238 U. S. 473; *Spiller* v. *A. T. & S. F.,*

253 U. S. 117; *St. Louis S. W.* v. *Commission,* 264 U. S. 64; *Pittsburgh & W. Va.* v. *United States,* 6 Fed. (2d) 646; Commerce Court Act, June 18, 1910, § 13.

The Commerce Court Act and the Urgent Deficiencies Act do not confer the jurisdiction of the specially-constituted District Court over every order entered by the Commission. *Procter & Gamble* v. *United States,* 225 U. S. 282; *Lehigh Valley* v. *United States,* 243 U. S. 412; *United States* v. *Ills. Central,* 244 U. S. 82. The fact that the valuation is styled an order is immaterial. *Del. & Hud.* v. *United States,* 266 U. S. 438.

In destroying the valuation the District Court also destroyed the statute; for a valuation preliminarily adjudged to be void may not be offered as *prima facie* evidence. The District Court threw the entire task of valuation of railway property out of the Commission and into the courts and utterly defeated not only the purpose of Congress but also thirteen years of work by the Commission at the expenditure of many millions of dollars. The Valuation Act neither provides nor contemplates such procedure.

When the tentative valuation becomes final, it may be used as *prima facie* evidence in proceedings before the Commission and in judicial proceedings. When the valuation is offered and received in any proceeding before the Commission as *prima facie* evidence, the door of the Commission is still open to the carrier or any party in interest to assail the valuation, with additional evidence or otherwise,—which is the second hearing. If an order reducing rates is then entered, and the carrier or any other interested party files a bill in the appropriate District Court to enjoin, and evidence is received before the District Court, the case must be referred back to the Commission for its action before final action is taken by the court, which is the third hearing. If the Commission fails to modify its order the case then again comes

before the court for final determination, which is the fourth hearing. Thus four hearings in orderly sequence are allowed by the Valuation Act.

The carrier claims the right to another hearing by an original bill to strike down the final valuation the instant it is issued and before any attempt is made to use it. If the jurisdiction exercised by the District Court is sustained, the procedure provided for the two hearings which may follow after the valuation has been offered before the Commission or the court as *prima facie* evidence is destroyed.

The Commission followed the statute strictly. The phrase "rate-making purposes" was not an invention of the Commission for the purpose of this particular valuation. That phrase has been recognized and used by both Congress and this Court. *Stanislaus County* v. *San Joaquin Co.,* 192 U. S. 201; *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 153; *Galveston Elec. Co.* v. *Galveston,* 258 U. S. 388; *Patterson* v. *Mobile Gas Co.,* 271 U. S. 131; *McCardle* v. *Indianapolis Water Co.,* 272 U. S. 400; *Ottinger* v. *Consol. Gas Co.,* 272 U. S. 576.

This case is controlled by *Smyth* v. *Ames,* 169 U. S. 466; *Minnesota Rate Cases,* 230 U. S. 552; *Wisconsin Rate Case,* 257 U. S. 563; *New Eng. Divisions Case,* 261 U. S. 184; and *Dayton-Goose Creek Ry.* v. *United States,* 263 U. S. 456.

*Mr. Charles E. Hughes,* with whom *Messrs. Henry A. Scandrett, A. S. Halsted,* and *J. M. Souby* were on the brief, for appellee.

The District Court had jurisdiction. Petitioner invokes both the special statutory jurisdiction under the Urgent Deficiencies Act of October 22, 1912, 38 Stat. 219, and the general equity jurisdiction. The Hepburn Act of June 29, 1906, 34 Stat. 584, by amendment of § 16 of the Interstate Commerce Act, vested in the Circuit Courts

jurisdiction "to hear and determine" suits to enjoin, set aside, annul, or suspend any order or requirement of the Commission. The jurisdiction of the Circuit Courts was transferred to the Commerce Court by the Act of June 18, 1910, 36 Stat. 539, and again transferred by the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 219, to the District Courts, where it still remains. Prior to the enactment of this statutory remedy the Circuit Courts could entertain under their general equity jurisdiction suits to enjoin orders of the Commission if the necessary grounds for invoking equitable relief were shown. *Tex. & Pac.* v. *I. C. C.*, 162 U. S. 197. There was no occasion, therefore, for the enactment of the special statutory remedy unless it was designed to vest in the Circuit Courts a special jurisdiction to hear suits to enjoin orders of the Commission, independently of such a showing of grounds for invoking the aid of a court of equity as would be necessary in a suit under the general equity jurisdiction. Some sixty cases brought under this statutory remedy have come to this Court and in none of them has it been intimated that this remedy is unavailable in a case for which an adequate remedy at law exists.

The jurisdictional statute does not limit the character of orders that may be reviewed in this form. A final valuation order is an order of the Commission. Such an order is not subject to any of the limitations which this Court has announced upon the review of orders of the Commission. It is not necessary that the order require the petitioner to do or refrain from doing some specific thing. *Chicago Junction Case*, 264 U. S. 258. In *Delaware & Hudson Co.* v. *United States*, 266 U. S. 438, although relief against a tentative valuation order was denied, jurisdiction was entertained. The order in this case is the final and affirmative action of the Commission fixing the valuation of petitioner's property as of valuation date. The fact that the valuation so

determined is made by the Valuation Act merely *prima facie* evidence does not make the order proof against attack in a suit of this character. If the valuation is invalid, as asserted by petitioner, it is improper that such valuation should be used in any proceedings under the Interstate Commerce Act, even though its effect is only that of *prima facie* evidence. The theory of this suit is that the Commission has not performed its duty under the Valuation Act, that the result of its work is not the result contemplated thereby and that therefore the valuation fixed by its final order is not entitled to the presumption of accuracy extended by the Valuation Act. Petitioner has such an interest in the subject matter as to entitle it to insist upon strict performance by the Commission of its duties under the Act. *Kansas City Southern* v. *I. C. C.*, 252 U. S. 178.

Although believing the showing unnecessary, petitioner has shown that it has no adequate remedy at law. The petition alleges that the immediate and continuing effect of the order is and will be greatly to injure and impair petitioner's financial credit and its ability to borrow money. Petitioner had on valuation date $56,274,000 of mortgage bonds outstanding against the property which the Commission has valued at $45,200,000. Its property investment according to its books was $76,391,598, and, if this figure were reduced to the Commission's valuation figure, petitioner's liabilities, other than capital stock, would exceed its assets and it would have a profit and loss deficit of many millions of dollars. The ordinary conduct of its railroad business required continuous expenditures for additions and betterments. It is obvious that petitioner could not raise additional capital by public borrowing, or subscription to stock, in the face of this valuation. It is also obvious that a further injury would necessarily result from the use of this valuation, as a basis for rates under § 15a of the Interstate Commerce

Act, or as a factor in prescribing the divisions of joint rates under § 15, or as a limit upon capitalization in the case of a consolidation under § 5. No adequate remedy at law exists against this invalid valuation. *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1.

The contention that this suit is premature is unfounded. While presumably the Commission will find it necessary at some future time to bring its valuation down to a later date, the fact remains that its order under review is a final determination of the value as of June 30, 1914. The Commission's valuations as of 1914 have already been used in the adjustment of rates, and as a basis for a drastic accounting requirement as to depreciation recently made. *Tel. & R. R. Depreciation Charges,* 118 I. C. C. 295.

The Valuation Act requires the Commission to find value. In finding what it designates "value for rate-making purposes" the Commission, as held by the District Court, has failed to comply with the statutory requirement. The Act directs that the Commission report "the value" and provides that the final valuation by the Commission shall be *prima facie* evidence of "the value" of the property in all proceedings under the Interstate Commerce Act or for its enforcement. The proceedings in which the valuations made under the Act are so declared to be *prima facie* evidence concern the consolidation of railroads under par. (6) of § 5, the issuance of securities under § 20a, and the division of joint rates under par. (6) of § 15, as well as the fixing of rates and recapture of excess earnings under § 15a. Neither the Act nor any other section of the Interstate Commerce Act recognizes or sanctions a special value for rate-making purposes. The phrase "value for rate-making purposes" occurs in no provision of the entire Interstate Commerce Act except in par. (4) of § 15a. But that section, added by the Transportation Act, 1920, did not, by these references or otherwise, purport to amend the Valuation Act.

As applied to a railroad property or any other property, value is what the property is worth—what it will bring as the result of fair negotiations between an owner who is willing to sell and a purchaser who desires to buy. *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106; *Havre de Grace Bridge Co.* v. *Towers,* 132 Md. 16; *State ex rel. R. R. Co.* v. *Clausen,* 63 Wash. 535; *State* v. *Savage,* 65 Neb. 714.

The Commission refused to comply with the requirement of the Valuation Act that it report an analysis of the methods of valuation employed by it. It also refused to comply with the requirement of the Act that it ascertain and report separately "other values and elements of value."

The Commission, because it fixed an arbitrary rate base, instead of finding value, as required by the Valuation Act, ignored facts and factors which are of major importance in the determination of value, viz.: elements of value evidenced by earning power; trackage and terminal rights; going concern value; and appreciation. The valuation fixed as of a date nine years prior to the date of its announcement and predicated upon obsolete prices, is unwarranted and misleading. In making its estimate of cost of reproduction of petitioner's properties the Commission applied unit prices of labor and materials prevailing during five years and in some instances ten years prior to June 30, 1914. That the use of such unit prices is unwarranted is established by *Southwestern Tel. Co.* v. *Pub. Ser. Comm.,* 262 U. S. 276; *Bluefields Water Works* v. *Pub. Ser. Comm.,* 262 U. S. 679; and *McCardle* v. *Indianapolis Water Co.,* 272 U. S. 400.

The rules adopted by the Commission for the valuation and classification of lands were unsound and unwarranted by law. The treatment of original cost is contrary to the requirement of the Valuation Act. The restatement of petitioner's investment account is wrong

in principle and erroneous and misleading in point of fact. The estimates of cost of reproduction are incomplete and erroneous. The treatment of the question of depreciation is arbitrary and unwarranted.

The Commission, as found by the District Court, fixed the value of petitioner's property for rate making purposes far below the actual value thereof as established by the evidence.

*Mr. Patrick J. Farrell,* with whom *Mr. E. M. Reidy* was on the brief, for the Interstate Commerce Commission.

Mr. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit was brought in the federal court for southern California by the Los Angeles & Salt Lake Railroad Company to enjoin and annul an order of the Interstate Commerce Commission purporting to determine the " final value " of its property, under what is now § 19*a* of the Act to Regulate Commerce, February 4, 1887, c. 104, 24 Stat. 379, as amended by the Valuation Act, March 1, 1913, c. 92, 37 Stat. 701, by the Act of February 28, 1920, c. 91, § 433, 41 Stat. 456, 474, 493, and by the Act of June 7, 1922, c. 210, 42 Stat. 624. *San Pedro, Los Angeles and Salt Lake Railroad Co.,* 75 I. C. C. 463; 97 I. C. C. 737; 103 I. C. C. 398. The bill asserts that the order fixing the final value is invalid, because it is in excess of the powers conferred upon the Commission, is contrary to the provisions of the Valuation Act, and violates the Fifth Amendment. It asserts also that irreparable injury is threatened.

Reasons why the final valuation is invalid are set forth specifically in 31 paragraphs and 35 sub-paragraphs of the bill. It charges that the Commission adopted rules for the valuation which are unsound and unwarranted in law; that in the determination of values it ignored facts and factors of major importance; that it refused to report

an analysis of the methods employed by it, although re-
quired so to do by the Valuation Act; and that it refused
to comply with the requirement that all values and ele-
ments of value be separately reported.   It charges that the
valuation was made as of June 30, 1914, whereas it should
have been made as of June 7, 1923; that the value found
is that for rate-making purposes, whereas the finding
should have been a general one of value for all purposes;
that properties enumerated were erroneously excluded
from the valuation; that in making the finding of value
the Commission erroneously failed to consider nine speci-
fied elements of value; that in making the finding of in-
vestment in road and equipment it ignored six items; that
in making the finding of cost of reproduction new it
ignored eleven items; that in making the finding of cost
of reproduction new less depreciation it made thirteen
errors; that in valuing the lands eleven errors were made;
and that in making the finding as to working capital a
large sum was arbitrarily deducted.   It alleges that for
these and other reasons the findings made are incomplete,
erroneous in law and misleading in point of fact.

The jurisdiction of the District Court was invoked
under the Urgent Deficiencies Act, October 22, 1913, c. 32,
38 Stat. 208, 219, and also under its general equity powers.
The United States was named as defendant and the Com-
mission became such by intervention.   Both defendants
answered.   But by appropriate pleadings the United
States objected that the adoption by the Commission of
the final valuation does not constitute an order within the
meaning of the Urgent Deficiencies Act; challenged also
the jurisdiction of the court to enjoin or annul the order
under its general equity powers; and moved that the bill
be dismissed.   The motion was overruled; the case was
heard on the pleadings and evidence; and, after proceed-
ings which it is not necessary to detail, a decree was entered
which annulled the final valuation and enjoined its use

for any purpose. *Los Angeles & Salt Lake Railroad* v. *United States,* 4 F. (2d) 736; 8 F. (2d) 747. Whether all or any of the claims and charges made in the bill are well founded, we have no occasion to consider; for we are of opinion that the District Court should have sustained the motion to dismiss the bill.

The final report on value, like the tentative report, is called an order. But there are many orders of the Commission which are not judicially reviewable under the provision now incorporated in the Urgent Deficiencies Act. See *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Hooker* v. *Knapp,* 225 U. S. 302; *Lehigh Valley R. R. Co.* v. *United States,* 243 U. S. 412; *United States* v. *Illinois Central R. R. Co.,* 244 U. S. 82, 89; *Delaware & Hudson Co.* v. *United States,* 266 U. S. 438. For the first nineteen years of the Commission's existence no order was so reviewable. The statutory jurisdiction to enjoin and set aside an order was granted in 1906, because then, for the first time, the rate-making power was conferred upon the Commission, and then disobedience of its orders was first made punishable. Hepburn Act, June 29, 1906, c. 3591, §§ 2–7, 34 Stat. 584, 586–595. The first suit to set aside an order was brought soon after. *Stickney* v. *Interstate Commerce Commission,* 164 Fed. 638; 215 U. S. 98. The jurisdiction conferred by the Hepburn Act was transferred, substantially unchanged, to the Commerce Court, by the Act of June 18, 1910, c. 309, § 1, 36 Stat. 539; and, when that court was abolished, to the district courts, by the Urgent Deficiencies Act. The so-called order here assailed differs essentially from all those held by this Court to be subject to judicial review under any of those Acts. Each of the orders so reviewed was an exercise either of the quasi-judicial function of determining controversies or of the delegated legislative function of rate making and rule making.

The so-called order here complained of is one which does not command the carrier to do, or to refrain from

doing, any thing; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees. It is the exercise solely of the function of investigation. Compare *Smith* v. *Interstate Commerce Commission*, 245 U. S. 33. Moreover, the investigation made was not a step in a pending proceeding in which an order of the character of those held to be judicially reviewable could be entered later. It was merely preparation for possible action in some proceeding which may be instituted in the future—preparation deemed by Congress necessary to enable the Commission to perform adequately its duties, if and when occasion for action shall arise. The final report may, of course, become a basis for action by the Commission, as it may become a basis for action by Congress or by the legislature or an administrative board of a State. But so may any report of an investigation, whether made by a committee of Congress or by the Commission pursuant to a resolution of Congress or of either branch thereof.

The Valuation Act requires that the investigation and study be made of the properties of each of the rail carriers. There are about 1800. 40 Annual Report Interstate Commerce Commission, 13. In directing the Commission to investigate the value of the property of the several carriers, Congress prescribed in detail the subjects on which findings should be made, and constituted the " final valuations " and " the classification thereof " *prima facie* evidence, in controversies under the Act to Regulate Commerce. Every party in interest is, therefore, entitled to

have and to use this evidence; and the carrier, being a party in interest, has the remedy by mandamus to compel the Commission to make a finding on each of the subjects specifically prescribed. *Kansas City Southern Ry. Co.* v. *Interstate Commerce Commission,* 252 U. S. 178. But Congress did not confer upon the courts power either to direct what this " tribunal appointed by law and informed by experience," *Illinois Central Ry. Co.* v. *Interstate Commerce Commission,* 206 U. S. 441, 454, shall find, or to annul the report, because of errors committed in making it. Moreover, errors may be made in the final valuation of the property of each of the nearly 1800 carriers. And it is at least possible that no proceeding will ever be instituted, either before the Commission or a court, in which the matters now complained of will be involved or in which the errors alleged will be of legal significance.

The mere fact that Congress has, in terms, made " all final valuations . . and the classification thereof . . . *prima facie* evidence of the value of the property in all proceedings under the Act to Regulate Commerce . . in all judicial proceedings for the enforcement of the Act . . and in all judicial proceedings brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission " is, obviously, not a violation of the due process clause justifying proceedings to annul the order. That to make the Commission's conclusions *prima facie* evidence in judicial proceedings is not a denial of due process, was settled by *Meeker* v. *Lehigh Valley R. R. Co.,* 236 U. S. 412, 430, 431. It was there said of a like provision relating to reparation orders: " This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence." See also *Mills*

v. *Lehigh Valley R. R. Co.*, 238 U. S. 473, 481–482; *St. Louis Southwestern Ry. Co.* v. *United States*, 264 U. S. 64, 77.

Nor does the fact that " all final valuations . . and the classifications thereof " are made *prima facie* evidence prevent the report from being solely an exercise of the function of investigation. Data collected by the Commission as a part of its function of investigation, constitute ordinarily evidence sufficient to support an order, if the data are duly made part of the record in the case in which the order is entered. See *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88, 93; *Chicago Junction Case*, 264 U. S. 258, 262; *United States* v. *Abilene & Southern Ry. Co.*, 265 U. S. 274, 286–290; Act of June 18, 1910, c. 309, § 13, 36 Stat. 539, 555. Inquests and inquisitions, if they were expressly authorized, are, at common law, admissible in evidence in judicial proceedings, thus constituting an exception to both the hearsay rule and the rule against opinion evidence. 3 Wigmore on Evidence (2d ed.), §§ 1671–1674. Some inquests are at common law also *prima facie* evidence of the facts found. *Hughes* v. *Jones*, 116 N. Y. 67.

Congress has provided adequate remedies for the correction of errors in the final valuation and the classification thereof. The conclusions reached by the Commission must be submitted first in the form of a tentative report, § 19a, pars. (f) and (h). When so submitted, the carrier is authorized to file a protest and to be heard thereon, par. (i). If such protest is filed, the Commission is directed to make in the report such changes, if any, as it may deem proper. Even if no protest is filed, the Commission may of its own motion upon due notice to parties in interest correct the tentative report. Compare *New York, Ontario & Western Ry. Co.* v. *United States, post,* p. 652. When the final report is introduced in evidence the opportunity to contest the correctness of the findings

therein made is fully preserved to the carrier; and any error therein may be corrected at the trial. Specific findings may be excluded because of errors committed in making them. It is conceivable that errors of law may have been committed which are so fundamental and far-reaching, as to deprive the "final valuations . . and the classification thereof " of all probative force. Moreover, additional evidence may be introduced. Paragraph (j) provides that " if upon the trial of any action involving a final value fixed by the Commission, evidence shall be introduced regarding such value which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto and substantially affecting the value," the proceedings shall be stayed so as to permit the Commission to consider the same and fix a final value different from that fixed in the first instance, and to " alter, modify, amend or rescind any order which it has made involving such final value."

The District Court rested jurisdiction to entertain a suit to set aside the valuation order largely upon the provisions of paragraph (j), believing that such a suit was within the scope of the words " upon the trial of any action involving a final value." That paragraph was intended to apply to actions brought to set aside rate-fixing orders in which the question of the value of the carrier's property would be material. In our opinion it is not applicable to so-called orders fixing only valuations. The objection to entertaining this suit to annul the final valuation is not merely that the question presented is moot, as in *United States* v. *Alaska Steamship Co.*, 253 U. S. 113, 116; or that the plaintiff's interest is remote and speculative as in *Hines Yellow Pine Trustees* v. *United States*, 263 U. S. 143, 148. There is the fundamental infirmity that the mere existence of error in the final valuation is not a wrong for which Congress provides a remedy under the Urgent Deficiencies Act.

Little need be added concerning the further contention that the suit should be entertained under the general equity power of the court. Two arguments are urged in support of the proposition. One is that since the Commission has by reason of errors of law and of judgment grossly undervalued the property, its report will, unless suppressed, injure the credit of the carrier with the public. The other is that the. Commission may itself be misled into illegal action by the erroneous conclusions and may apply them to the carriers' injury, since use of the final valuation is required in making rates pursuant to § 15a of the Act to Regulate Commerce, as amended by Transportation Act, c. 91, § 421, 41 Stat. 456; in prescribing divisions of joint rates under § 15; in determining the limit upon the amount of capitalization, in the event of a consolidation under § 5; in determining the propriety of an issue of securities, under § 20a; or as the basis of computation of the amount of excess earnings to be recaptured under § 15a. Neither argument is persuasive. The first reminds of the effort made in *Pennsylvania R. R. Co.* v. *United States Railroad Labor Board,* 261 U. S. 72, to suppress the report of that board. The second reminds of the attempt to secure a declaratory judgment in *Liberty Warehouse Co.* v. *Grannis, ante,* p. 70; and, also, of cases in which it was sought to enjoin a municipality from passing an illegal ordinance. Compare *New Orleans Waterworks Co.* v. *New Orleans,* 164 U. S. 471, 481; *McChord* v. *Louisville & N. Ry. Co.,* 183 U. S. 483.

No basis is laid for relief under the general equity powers. The investigation was undertaken in aid of the legislative purpose of regulation. In conducting the investigation, and in making the report, the Commission performed a service specifically delegated and prescribed by Congress. Its conclusions, if erroneous in law, may be disregarded. But neither its utterances, nor its processes of reasoning, as distinguished from its acts, are a subject

for injunction. Whether the remedy conferred by the Urgent Deficiencies Act is in all cases the exclusive equitable remedy, we need not determine.

*Reversed.*

MR. JUSTICE BUTLER took no part in the consideration or decision of this case.