BROOKLYN EASTERN DIST. TERMINAL
v. UNITED STATES et al.

District Court, S. D. New York.   July 28,
1927.

John F. Finerty, of Washington, D. C., and Henry B. Closson, of New York City, for petitioner.

P. J. Farrell, of Washington, D. C., for the Interstate Commerce Commission.

Blackburn Esterline, of Washington, D. C., for the United States.

Before L. HAND and AUGUSTUS N. HAND, Circuit Judges, and GODDARD, District Judge.

L. HAND, Circuit Judge (after stating the facts as above). We are in some doubt as to the proper constitution of the District Court in such a case. In Smith v. Wilson, 273 U. S. 388, 47 S. Ct. 385, 71 L. Ed. 699, the Supreme Court held that, under section 266 of the Judicial Code (28 USCA § 380), three judges need not sit, unless the plaintiff had pressed to a hearing his prayer for a preliminary injunction. This conclusion depended partly upon the use of the word "such" in that section, partly upon the fact that the anomaly did not in that case arise of one judge on final hearing overruling three. The Urgent Deficiencies Act (38 Stat. p. 220), under which this court is constituted, uses the phrase "in any case," instead of "in such case," and certainly applies verbally to the situation here at bar. Moreover, we sit in succession to the Commerce Court, after whose creation it was not possible for a single judge to review an order of the Commission. It seems to us improbable that[1] the Urgent Deficiencies Act should have meant to revert to the earlier system; we think, on the contrary, that the language expresses the intent. This motion was brought on before Judge AUGUSTUS N. HAND, while a District Judge, and as he joins with Judge GODDARD and me in its disposition, it would in any case seem to be a matter of indifference that we sit with him, even though he could decide it alone. If we are wrong in our understanding of Smith v. Wilson, the decision will in any view be coram judice.

The respondents object that the petition is premature, there being no order which we may review under the second subdivision of section 207 of the Judicial Code, the source of our authority, except as the petition be regarded as a bill in equity. The petitioner replies that the two general orders are such orders, and that besides them the report of the commission upon the hearing will serve. As to the report, we think that U. S. v. Los Angeles & S. L. R. Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651, is an answer. It was there held that the valuation of a carrier's property was not reviewable by the District Court, being but an incident in the determination of its eventual duty to pay. True, the valuation was not conclusive, but neither are the findings in the report at bar. At any rate the valuation was not thought to be of itself an order, certainly not a reviewable order. In that case the carrier appears to have admitted those facts which have been found by the Commission here, so that we have a case even further from final determination than was that. The findings in the report do not determine the extent of the petitioner's liability, though they do indeed settle that it owes some duty. The liquidation of its amount is left wholly to the future and it cannot be enforced while it so remains uncertain. So far, therefore, as the petitioner relies upon the findings it must fail. They are merely steps to the eventual order which may be reviewed.

So far as concerns the general orders of 1923 and 1924 and the "requests" which followed them, the case is not so plain. That these were "orders" of the Commission we ought to admit. Not all orders of the Commission are, however, reviewable. We may agree that these were not merely on procedural matters, like that in U. S. v. Illinois Central R. Co., 244 U. S. 89, 37 S. Ct. 584, 61 L. Ed. 1007, or N. Y., O. & W. R. Co. v. U. S. (D. C.) 14 F.(2d) 850. Nor were they negative orders, as in Proctor & Gamble v. U. S., 225 U. S. 282, 32 S. Ct. 761, 56

L. Ed. 1091; Lehigh Valley R. Co. v. U. S., 243 U. S. 412, 37 S. Ct. 397, 61 L. Ed. 819; Manufacturers' Ry. Co. v. U. S., 246 U. S. 457, 483, 38 S. Ct. 383, 62 L. Ed. 831. On the other hand, they did not grant a privilege, which needs no enforcement, like The Chicago Junction Case, 264 U. S. 258, 44 S. Ct. 317, 68 L. Ed. 667; U. S. v. New River Co., 265 U. S. 533, 44 S. Ct. 610, 68 L. Ed. 1165; Venner v. Mich. Central R. Co., 271 U. S. 127, 131, 46 S. Ct. 444, 70 L. Ed. 868. On the whole it seems to us that they were meant to do no more than direct the carriers in general to comply with the statute, specifying how the payment should be made, if they chose to comply. If we are to accept as authoritative the reasoning in Proctor & Gamble v. U. S., supra, 293, 294, of 225 U. S. (32 S. Ct. 761) the test under the second subdivision of section 207 is whether the order is enforceable. The first subdivision was there said to be designed to enforce orders; the second to review those which could be enforced. The only qualification we have found is in the cases where the order is automatic; e. g., when it grants a privilege. This is at least in accord with the enumeration of reviewable orders in U. S. v. Los Angeles & S. L. R. Co., supra, 309, 310 of 273 U. S. (47 S. Ct. 413) though probably that was not intended to be exhaustive.

That the orders did not purport to establish an immediate duty to pay the excess as reported seems to us to follow from the nature of the duty. The statute required carriers to pay the excess, as calculated upon the valuation fixed by the Commission under subdivision 4 of section 15a, after the conclusion of the investigation provided for in section 19a (49 USCA § 19a) and we think that the duty was conditional upon that valuation. We might agree that it would be a reasonable rule for the Commission to require the payment of such amounts as the carriers admitted. But, if so, the rule could be valid only when the admission was itself unconditional, which is not the case here. All the petitioner admits is that, if liable at all, it is liable for the sums returned. The result of treating the order as presently enforceable in such a case would be to allow the Commission to sue for this provisional amount, reserving for a subsequent suit the collection of the balance after the duty became absolute. Besides raising a question whether the Commission could impose an added liability upon the carriers, such a course would allow the Commission to split a single cause of action into two parts, suing for part now and later for the rest. That would at least be an anomaly.

We question, therefore, whether any rule or order of the kind would be lawful; the statute having, as we have said, imposed but a single duty, and that conditional upon the valuation. But we need not decide that question, and we do not. It is enough if the orders need not be taken as an attempt, under the Commission's power to make reasonable rules, so to extend the apparent purpose of the statute. That they need not so be taken appears, not only from their character, but from the action of the Commission upon them. They were not directed specifically to any given carrier—not perhaps conclusive in itself—and they are capable of being regarded as admonitory, rather than mandatory. As commands they are, to say the least, equivocal. Further, although more than four years have passed since the order of 1923 was issued, the Commission has done no more than write letters "requesting" the petitioner to make the payment. This is not the peremptory language of an order.

■ The general equity of the petition as a bill in equity does not seem to us higher. That the petitioner may suffer in its credit is, of course, possible, but that is not regarded as sufficient ground for relief. U. S. v. Los Angeles & S. L. R. Co., supra, 273 U. S. 314 (47 S. Ct. 413). Bills quia timet are of limited scope (Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 47 S. Ct. 282, 71 L. Ed. 541), and do not ordinarily include such remote consequences as these.

The petitioner's chief reliance, properly enough, is Dayton-Goose Creek R. Co. v. U. S., 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472. In the Supreme Court the respondents there did not press the objection which they raise here, but did "seek without delay a decision on the merits." That decision involved the constitutionality of the whole "recapture" clause, so interwoven with the valuation of the carriers as to make it at least doubtful whether one could survive the other. That valuation was a vast enterprise involving hundreds of millions, and it was then far from completion. It was of the most pressing importance to the interests of the nation that the validity of the statute should be settled as soon as possible. Thus there was every inducement to move the court to a decision on the merits.

The petitioner argues that these considerations were irrelevant, if the point was one of jurisdiction, which consent cannot confer. That is indeed true when the question goes to the subject-matter. Assuming that, so far as concerns the jurisdiction of the court under section 207, the objection did so go to the

subject-matter, the petition as a bill in equity was not so limited. In that aspect it concerned the plaintiff's interest in its property, and while in ordinary cases the injury would be regarded as too remote (U. S. v. Los Angeles & S. L. R. Co., supra), the court might ignore the defect in equity when it was not pressed. The subject-matter was within its competence. Considering the circumstances under which it was decided and this fact as well, we cannot believe that the decision is to be taken as a precedent for allowing each carrier to raise in limine questions which in usual course must be postponed until its liability is asserted under the coercion of some immediate sanction.

The petition is dismissed without prejudice. The petitioner's motion falls with the disposal of the respondents'.