## CANADIAN RIVER GAS CO. et al. v. FEDERAL POWER COMMISSION.

### No. 1931.

Circuit Court of Appeals, Tenth Circuit.

March 4, 1940.

C. H. Keffer, of Amarillo, Tex., and Elmer L. Brock, of Denver, Colo. (H. L. Adkins, H. C. Pipkin, Wales H. Madden, and H. M. Adkins, all of Amarillo, Tex., P. C. Spencer of New York City, Wm. L. Darrah, of Amarillo, Tex., John P. Akolt, E. R. Campbell, and Milton Smith, all of Denver, Colo., and William A. Dougherty, of New York City, on the briefs), for petitioners.

Richard J. Connor, Asst. Gen. Counsel, Federal Power Commission, of Washington, D. C. (David W. Robinson, Jr., Gen. Counsel, and Edward H. Lange and W. A. Whittlesey, Attys., Federal Power Commission, all of Washington, D. C., on the brief), for respondent.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The Canadian River Gas Company,[1] the Colorado Interstate Gas Company,[2] and the Colorado-Wyoming Gas Company[3] are corporations organized and existing under the laws of the state of Delaware.[4]

The Canadian Company is engaged in the production and gathering of natural gas in the Amarillo Field in Texas and the transportation thereof through its main natural gas pipe line from the Amarillo Field to Clayton, N. M. Substantially all the gas produced by it is sold to the Colorado Company at Clayton, N. M., or at Gray, Okla. A small portion of such gas is sold and delivered by the Canadian Company to the Clayton Gas Company at Clayton, N. M., and the Amarillo Oil Company in Texas.

The Colorado Company owns and operates a main transmission natural gas pipe line extending from Clayton, N. M., to a point near the city of Denver, in the state of Colorado. The Wyoming Company owns and operates a main transmission natural gas pipe line extending from Littleton, Colo., to Cheyenne, Wyo.

The Colorado Company transports gas purchased by it from the Canadian Company, to a point near Denver, Colo., and there sells it to the Public Service Company of Colorado, a public utility engaged in the local distribution and sale of gas at retail to consumers in the city and county of Denver, state of Colorado. The Wyoming Company purchases gas from the Colorado Company and transports it from Littleton, Colo., to Cheyenne, Wyo., where it sells it to the Cheyenne Light, Fuel and Power Company, a public utility engaged in the local distribution and sale of gas at retail to consumers in the city of Cheyenne, Wyo.

Neither the Canadian Company nor the Colorado Company has held itself out as willing and ready to serve all customers who might desire to purchase natural gas. No gas is sold by them other than under private contracts. The Canadian Company has limited itself to contracts with the Colorado Company and two other companies. The Colorado Company has limited itself to contracts with five local distributing

---

[1] Hereinafter referred to as the Canadian Company.

[2] Hereinafter referred to as the Colorado Company.

[3] Hereinafter referred to as the Wyoming Company.

[4] Collectively, they will be referred to as the companies.

companies and two pipe line companies, its principal customer being the Public Service Company. Their transportation facilities are used exclusively for the transportation of their own gas.

On July 5, 1938, the Federal Power Commission,[5] purporting to act under the Natural Gas Act, 15 U.S.C.A. §§ 717, and 717a to 717w, inclusive, issued its general order No. 51, with a questionnaire attached thereto, served the same upon the Canadian Company and the Colorado Company and directed them to furnish the information therein called for. The order and questionnaire purported to require information to enable the Commission to determine whether the Canadian Company and the Colorado Company were natural gas companies within the meaning of the Natural Gas Act. The Canadian Company complied with the order and furnished the information therein requested under a written reservation that its action "should not be construed as a waiver by the company of its rights to contest the jurisdiction of the Commission in any proceeding instituted under said act affecting such company." The Colorado Company complied with the order and furnished the information therein requested under a like reservation.

On July 5, 1938, the Commission issued its general order No. 53 designating the time and place for filing schedules of rates and charges under Sec. 4(c) of the Natural Gas Act, 15 U.S.C.A. § 717c, and certain reports in connection therewith. A copy of this order was served upon the Canadian Company and the Colorado Company. Neither of them had any schedule of rates and charges, but each had certain private contracts for the sale of gas entered into prior to the enactment of the Natural Gas Act, which contracts stipulated specific prices for gas. The Canadian Company filed its contracts with the Commission under a reservation reciting that the filing of the contracts was not done voluntarily but under duress, due to the excessive penalties which would be incurred as a result of a failure to comply with the Natural Gas Act. The reservation further stated that the filing of the contracts should not be construed as an admission that the rates and charges provided in the contracts were subject to governmental regulation. The Colorado Company filed its contracts under a like reservation.

On December 22, 1938, the city and county of Denver filed a complaint with the Commission alleging that the Colorado Company's contract price for gas to the Public Service Company at the Denver rate was unjust, unreasonable, and discriminatory, and praying that the contract price be abrogated and that the Commission fix reasonable rates.

On March 14, 1939, the Commission made an order in the matter of Canadian River Gas Company, et al., Docket No. G-124. This order recited the foregoing facts with respect to the incorporation of the Canadian Company, the Colorado Company, and the Wyoming Company, and the facilities owned by each, and the business in which each engaged. It further recited that the main transmission natural gas pipe lines owned and operated by such companies "are so interconnected as to constitute, for the purposes of conducting an investigation, one continuous line extending from the Texas Panhandle, near Amarillo, Texas, to Cheyenne, Wyoming," and that such companies "are engaged in the transportation of natural gas in interstate commerce and the sale in interstate commerce of natural gas for resale for ultimate public consumption, for domestic, commercial, industrial, and other uses, and are, therefore, natural gas companies within the meaning of the Natural Gas Act." It further recited compliance by such companies with order No. 53 and the proceeding instituted by the city and county of Denver and like proceedings instituted by the Public Service Commission of the state of Wyoming respecting the contract between the Wyoming Company and the Cheyenne Light, Fuel and Power Company. The order further reads as follows:

"It is necessary and proper, in the public interest, and to aid in the enforcement of the provisions of the Natural Gas Act, that an investigation be instituted by the Federal Power Commission, on its own motion, into and concerning all rates, charges, classifications, rules, regulations, practices, or contracts of the Canadian River Gas Company, Colorado-Interstate Gas Company, and Colorado-Wyoming Gas Company.

"The Commission, on its own motion, *orders* that:

"An investigation of the Canadian River Gas Company, Colorado-Interstate Gas Company and Colorado-Wyoming Gas

---

[5] Hereinafter referred to as the Commission.

Company be and is hereby instituted for the purpose of enabling the Commission:

"(1) To determine with respect to each of said companies whether in connection with any transportation or sale of natural gas subject to the jurisdiction of this Commission any rates, charges, or classifications demanded, observed, charged, or collected, or any rules, regulations, practices, or contracts affecting such rates, charges, or classifications are unjust, unreasonable, unduly discriminatory, or preferential; and

"(2) If the Commission shall find that any such rates, charges, or classifications, rules, regulations, practices, or contracts are unjust, unreasonable, unduly discriminatory, or preferential, to determine and fix by appropriate order or orders just, reasonable, and nondiscriminatory rates, charges, classifications, rules, regulations, practices, or contracts to be thereafter observed and enforced."

On April 12, 1939, the Canadian Company and the Colorado Company filed a joint application for a rehearing and stay of the order of March 14, 1939.

The Canadian Company and the Colorado Company in their answer to the complaint of the city and county of Denver and in such application for rehearing set up the character of business in which they were engaged, alleged they had not held themselves out as able and willing to carry or transport gas for others, or as able and willing to furnish gas to the public, the private character of their contracts for the sale of gas, the facts leading up to the negotiation of such contracts, and that they had invested large sums of money on the faith of such contracts, and on those averments challenged the jurisdiction of the Commission to abrogate their contracts or regulate their rates, charges, classifications, rules, regulations, and practices under the Natural Gas Act.

On May 9, 1939, the Commission entered its order denying the application for rehearing and stay.

This is a petition of the Canadian Company and the Colorado Company to review the order of March 14, 1939, pursuant to 15 U.S.C.A. § 717r. The Commission has filed a motion to dismiss the petition on the ground the challenged order is not presently reviewable.

Sec. 717r (b) provides that any party to a proceeding under the Natural Gas Act aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the Circuit Court of Appeals of the United States for any circuit wherein the natural gas company to which the order relates is located or has its principal place of business, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

It will be observed that the order of March 14, 1939, finds that the companies are natural gas companies within the meaning of the Natural Gas Act, and that it is necessary and proper, in the public interest, and to aid in the enforcement of the Natural Gas Act, that an investigation be instituted by the Commission, on its own motion, into and concerning rates, charges, classifications, rules, regulations, practices, and contracts of such companies, and orders that an investigation of such companies "be and is hereby instituted."

It is in no proper sense a definitive order. Rather, it is a mere step in procedure. It neither commands nor inhibits any action on the part of the companies. Furthermore, no orders theretofore made by the Commission respecting the companies remained unexecuted. They had fully complied with general orders Nos. 51 and 53.

We think the case is distinguishable from Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 764, 83 L.Ed. 1147. There, the Federal Communications Commission had issued a series of orders requiring all telephone carriers subject to the Federal Communications Act of 1934, 48 Stat. 1064, 47 U.S.C.A. § 151 et seq., to file schedules of their charges, copies of contracts with other telephone carriers, information concerning their corporate and service history, their relations with affiliates, and their use of franks and passes. Copies of these orders were duly served on the Rochester Corporation. No response being had, the Telephone Division of the Communications Commission ordered the Rochester Corporation to show cause why it should not be required to file responses to the general orders theretofore served upon it. The Rochester Corporation answered claiming to be outside the requirements of the Act, except as to matters not involved. The Communications Commission appointed a trial examiner. The Rochester Corporation appeared specially and denied the Communications Com-

mission's jurisdiction. After a hearing, the examiner filed his report, to which the Rochester Corporation excepted. The Communications Commission, through its Telephone Division, sustained the findings of its examiner, determined that the Rochester Corporation was under the control of the New York Telephone Company, and ordered the Rochester Corporation classified "as subject to all common carrier provisions of the Communications Act of 1934, and, therefore, subject to all orders of the Telephone Division." The Supreme Court in its opinion said:

"The order of the Communications Commission in this case was therefore reviewable. It was not a mere abstract declaration regarding the status of the Rochester under the Communications Act, nor was it a stage in an incomplete process of administrative adjudication. The contested order determining the status of the Rochester necessarily and immediately carried direction of obedience to previously formulated mandatory orders addressed generally to all carriers amenable to the Commission's authority. Into this class of carriers the order under dispute covered the Rochester, and by that fact, in conjunction with the other orders, made determination of the status of the Rochester a reviewable order of the Commission."

In the instant case, there were no unexecuted, previously formulated, mandatory orders, nor did the order of March 14, 1939, in itself direct or inhibit any action on the part of the companies. It can only adversely affect the rights of the Canadian Company and the Colorado Company on the contingency of future administrative action. The language of Mr. Justice Brandeis in United States v. Los Angeles R. R. Co., 273 U.S. 299, 309, 310, 47 S.Ct. 413, 414, 71 L.Ed. 651, is apposite:

"The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation."

In United States v. Illinois Cent. R. Co., 244 U.S. 82, 37 S.Ct. 584, 61 L.Ed. 1007, certain coal companies filed petitions before the Interstate Commerce Commission asking that damages be assessed against the Railroad Company for an alleged failure to supply a sufficient number of coal cars for their respective shipping needs. The Railroad Company answered the petitions and denied the jurisdiction of the Interstate Commerce Commission to award damages for failure to furnish cars. After a hearing, the Interstate Commerce Commission filed a report holding that it had jurisdiction to consider the complaints and award whatever damages might be proved. A petition for rehearing was made and denied. Thereupon, the Interstate Commerce Commission entered an order assigning the cause for hearing. The Railroad Company then filed a petition in the district court in which it set up that the Interstate Commerce Commission was without jurisdiction and if the hearing before the Interstate Commerce Commission proceeded the Railroad Company would be compelled to attend such hearing, be put to great expense, and in all probability an order of reparation would be made; that the Railroad Company would then be forced to defend at great trouble and expense three separate lawsuits based on such awards, and that it would be put at great disadvantage in defending such suits because of the prima facie presumption of the correctness of the Interstate Commerce Commission's findings. It prayed for an order annulling the order of the Interstate Commerce Commission and, pending the hearing, an order restraining the Interstate Commerce Commission from acting. The Supreme Court held that the order was not reviewable.[6] In the Rochester Telephone Case, United States v. Illinois Cent. R. Co., supra, is cited with approval, the court saying:

"Thus, orders of the Interstate Commerce Commission setting a case for hearing despite a challenge to its jurisdiction * * are not reviewable."

We conclude that the order is not reviewable.

The motion to dismiss is accordingly sustained, and the proceeding remanded to the Commission to take such action as it is advised.

---

[6] See, also, Chamber of Commerce of Minneapolis v. Federal Trade Commission, 8 Cir., 280 F. 45;

Petroleum Exploration, Inc., v. Public Service Comm. of Kentucky, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294;

Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.