**STATE OF MINNESOTA and Railroad and Warehouse Commission of the State of Minnesota, Plaintiffs,**

v.

**UNITED STATES of America, Defendant,**

and

**Chicago and North Western Railway Company, a Wisconsin corporation, and Interstate Commerce Commission, Intervening Defendants.**

No. 3–64–Civ. 147.

United States District Court
D. Minnesota,
Third Division.
Feb. 15, 1965.

ton, D. C., for intervening defendant Interstate Commerce Commission.

Roger S. Bessey and Wickham, Borgelt, Skogstad & Powell, Milwaukee, Wis., Jordan Jay Hillman, Chicago, Ill., and Stringer, Donnelly & Sharood, St. Paul, Minn., for intervening defendant Chicago and North Western Ry. Co.

Before VOGEL, Circuit Judge, and DEVITT and LARSON, District Judges.

Walter F. Mondale, Atty. Gen. of Minnesota, and Richard Musenbrock, Sp. Asst. Atty. Gen., St. Paul, Minn., for plaintiffs.

William H. Orrick, Jr., Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Miles W. Lord, U. S. Atty., Minneapolis, Minn., for defendant.

Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, and H. Neil Garson, Assoc. Gen. Counsel, Interstate Commerce Commission, Washing-

LARSON, District Judge.

This action has been brought by the State of Minnesota and its Railroad and Warehouse Commission to appeal a decision of the Interstate Commerce Commission (the Commission). The Chicago and North Western Railway Company (North Western) was granted leave to intervene as a defendant.

In October, 1961, the North Western, acting pursuant to section 13a(1) of the Interstate Commerce Act,[1] announced

---

1. Section 13a(1) of the Interstate Commerce Act, 49 U.S.C. § 13a(1) (1958), 72 Stat. 571-572 (1958) provides:

"A carrier or carriers subject to this chapter, if their rights with respect to the discontinuance or change, in whole or in part, of the operation or service of any train or ferry operating from a point in one State to a point in any other State or in the District of Columbia, or from a point in the District of Columbia to a point in any State, are subject to any provision of the constitution or statutes of any State or any regulation or order of (or are the subject of any proceeding pending before) any court or an administrative or regulatory agency of any State, may, but shall not be required to, file with the Commission, and upon such filing shall mail to the Governor of each State in which such train or ferry is operated, and post in every station, depot or other facility served thereby, notice at least thirty days in advance of any such proposed discontinuance or change. The carrier or carriers filing such notice may discontinue or change any such operation or service pursuant to such notice except as otherwise ordered by the Commission pursuant to this paragraph, the laws or constitution of any State, or the decision or order of, or the pendency of

any proceeding before, any court or State authority to the contrary notwithstanding. Upon the filing of such notice the Commission shall have authority during said thirty days' notice period, either upon complaint or upon its own initiative without complaint, to enter upon an investigation of the proposed discontinuance or change. Upon the institution of such investigation, the Commission, by orders served upon the carrier or carriers affected thereby at least ten days prior to the day on which such discontinuance or change would otherwise become effective, may require such train or ferry to be continued in operation or service, in whole or in part, pending hearing and decision in such investigation, but not for a longer period than four months beyond the date when such discontinuance or change would otherwise have become effective. If, after hearing in such investigation, whether concluded before or after such discontinuance or change has become effective, the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in

that it proposed to discontinue several passenger trains. The trains involved were Nos. 400 and 401, which ran between Chicago, Illinois, and Minneapolis, Minnesota, via Milwaukee, Wisconsin, and Nos. 518 and 519 operating between Chicago and Mankato, Minnesota, via Madison, Wisconsin. The trains met at Wyeville, Wisconsin, and their schedules were arranged so as to provide virtually through service between all the stations which the trains served.

The Commission decided to investigate the proposed discontinuances. In March, 1962, it found that the public convenience and necessity required that the operation of the trains should be continued, and it entered an Order requiring this to be done for the statutory period of one year.

Early in 1963 the North Western announced that it intended to discontinue the trains as soon as the statutory period had elapsed. The Commission instituted a second investigation. This time it decided that the value of the service was outweighed by the burden on the carrier of maintaining it. An Order was entered in July, 1963, discontinuing the investigation. Under the provisions of 13a(1) the North Western was then free to discontinue the trains and did so shortly thereafter. The Commission subsequently refused to reopen the hearings to take further evidence.

This action is now brought to set aside the Order discontinuing the investigation and to compel the Commission to hear additional evidence. Jurisdiction is alleged under 28 U.S.C. § 1336 (1958), which provides for appeals from "any order" of the Commission.

The trains discontinued were the last passenger trains operating between many of the points involved, though freight service is still maintained on the lines. The plaintiffs suggest that the fact that the railroad was terminating its passenger service on the routes means that the lines were being "abandoned" within the meaning of 49 U.S.C. § 1(18).[2] Thus they argue that the railroad could not abandon the service under the terms of section 13a(1) and that the Commission did not have proper jurisdiction of the matter in the first place.

There are three replies to this contention.

■ 1. Section 1(18) provides that the Commission must approve the "construction of a new line of railroad" or the plans to "abandon * * * a line of railroad." The use of these terms in the statute implies that the ideas of construction and abandonment are used as

whole or in part, for a period not to exceed one year from the date of such order. The provisions of this paragraph shall not supersede the laws of any State or the orders or regulations of any administratve or regulatory body of any State applicable to such discontinuance or change unless notice as in this paragraph provided is filed with the Commission. On the expiration of an order by the Commission after such investigation requiring the continuance or restoration of operation or service, the jurisdiction of any State as to such discontinuance or change shall no longer be superseded unless the procedure provided by this paragraph shall again be invoked by the carrier or carriers."

2. Section 1(18) of the Interstate Commerce Act, 49 U.S.C. § 1(18) (1958), 41 Stat. 477–478 (1920) provides:
"No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the construction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity permit of such abandonment."

coextensive opposites. In other words, to "abandon" a line means to completely cease using it for any service. This interpretation is also consistent with the ordinary meaning of "abandon." Nor is there anything in the legislative history of the provision that would suggest a different conclusion.[3]

2. All prior decisions have been to the contrary.[4] The discussions in several recent cases indicate that the Supreme Court has adopted the view that a line is not abandoned as long as the carrier uses it for freight service. Southern Ry. v. North Carolina, 376 U.S. 93, 100–101, 84 S.Ct. 564, 11 L.Ed.2d 541 (1964) and New Jersey v. New York, Susquehanna & Western Railroad Co., 372 U.S. 1, 5–6, 83 S.Ct. 614, 9 L.Ed.2d 541 (1963).

3. Even if the discontinuances put into effect were thought of as abandonments, they plainly came within the terms of section 13a(1). Since that section was enacted almost forty years after section 1(18) and is directed to the specific type of problem presented here, it would only be reasonable to hold that it provided an alternative ground for jurisdiction even if proceedings could have been instituted under section 1(18).

The plaintiffs also urge that the evidence introduced at the hearing was not sufficient to support a finding that the public convenience and necessity did not require the service to be continued—especially in view of the contrary conclusion reached one year earlier. We have concluded that we have no jurisdiction to review this issue because the Order terminating the investigation was not an appealable Order within the meaning of 28 U.S.C. § 1336.

Section 13a(1) grants full authority to discontinue interstate passenger service to the carrier subject only to a discretionary power given the Commission to investigate the proposed service reductions and to order the service continued for one year if the Commission decides it is needed. *No specific Commission approval of the service cutbacks is ever required.* Whether or not the Commission will even investigate the proposed discontinuances is a matter left to its absolute discretion. State of New Jersey v. United States, 168 F.Supp. 324, 328–330 (D.N.J.1958) aff'd per curiam 359 U.S. 27, 79 S.Ct. 607, 3 L.Ed.2d 625 (1959). This opinion noted that:

"Section 13a(1) clearly leaves to the absolute discretion of the Commission the determination of whether or not it, upon receipt of a complaint directed against a railroad's notice of intention to discontinue service, shall make any investigation of the matter or avail itself of its temporary veto power by way of suspension within the limitations of the Act. The Act is self-implementing insofar as it affords authorization to a carrier to discontinue service. No provision is made for any action of the Commission to render such authorization effective. The efficacy of the congressional authorization is in no respect dependent upon any action on the part of the Commission." [5]

The only difference in this case is that the Commission undertook an investigation of the proposed discontinuances. The provisions of section 13a(1) give the Commission only two choices after it has conducted an investigation. It may do nothing, in which case the carrier puts

3. In fact, the Conference Report on this provision spoke of "the authority of the commission over the construction and abandonment of lines of railroad. * * *" 59 Cong.Rec. 3263 (1920).

4. Virtually all the relevant authorities are collected and discussed in Board of Pub. Util. Comm'rs of New Jersey v. United States, 158 F.Supp. 98, 100–101 (D.N.J.

1957) decree vacated and appeal dismissed as moot by stipulation 359 U.S. 982, 79 S.Ct. 939, 3 L.Ed.2d 932 (1959). Also see: Town of Wilmington v. Department of Pub. Util., 341 Mass. 599, 171 N.E.2d 466 (1961) and Southern Ry. v. South Carolina Public Service Comm'n, 31 F. Supp. 707, 711 (E.D.S.C.1940).

5. 168 F.Supp. 329.

the service reductions into effect at the end of the four month period, or it may make appropriate findings and order the service continued. In the present case, the Commission did find that the maintenance of the train was a burden on interstate commerce and was not required by the public convenience and necessity, but both the report and the finding were gratuitous acts on the part of the Commission which were not required by any provision of section 13a (1). Every decision not to investigate a proposed discontinuance or to terminate an investigation being conducted probably shows that the Commission believes that the service may properly be discontinued. This was certainly true in State of New Jersey v. United States, supra. However, the reasoning behind a particular decision on a matter which is within the sole discretion of the Commission is not something which this Court can review.

The primary purpose of a hearing under section 13a(1) is to give the Commission enough information to enable it to reach a sound judgment as to whether it should interfere with the proposed cutbacks. When the Commission is already thoroughly familiar with the problems and knows that it does not want to interfere, as was the case in State of New Jersey v. United States, supra, the Commission does not need to hold hearings. In most other cases it could be expected to conduct an investigation even though that is not required. If the Commission decides not to interfere with the cutbacks in service, then it simply takes no action beyond terminating the investigation. If it decides that the service should be continued, then the hearings must provide a record which adequately supports the required conclusions as to the need for the service and the burden on the carrier of providing it. Those findings

would be reviewable by the Courts. The mere decision of the Commission to take no action is not. As was pointed out in United States v. Los Angeles & S. L. R. R., 273 U.S. 299, 309–310, 47 S.Ct. 413, 414, 71 L.Ed. 651 (1927):

> "The final report * * * is called an order. But there are many orders of the Commission which are not judicially reviewable * * *.

> "The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees. It is the exercise solely of the function of investigation."

This analysis is not impaired by the fact that the Commission decided after the first hearing that the service was required by the public convenience and necessity and ordered it maintained for a year. As the Commission points out, it has power to change its mind as to the weight to be accorded particular policies or facts so long as there is substantial evidence in the record to support the facts on which its conclusions are based.[6]

Even more important here, however, is the fact that by the terms of section 13a (1) any findings which the Commission makes will be ineffective after one year. If the railroad again seeks to discon-

6. Virginian Ry. v. United States, 272 U.S. 658, 665–666, 47 S.Ct. 222, 71 L.Ed. 463 (1926); Northern Pac. Ry. v. United States, 41 F.Supp. 439, 446 (D.Minn. 1941) aff'd 316 U.S. 346, 62 S.Ct. 1166, 86 L.Ed. 1521 (1942); Motor Freight Express v. United States, 119 F.Supp. 298, 305 (M.D.Pa.) aff'd per curiam 348 U.S. 891, 75 S.Ct. 215, 99 L.Ed. 700 (1954).

tinue the service, the Commission must conduct a new investigation and make new findings if it thinks the matter deserves further consideration. If it does not investigate, the railroad is free to discontinue the services at the expiration of the Commission's first Order.

■ The discretionary power given the Commission by section 13a(1) is certainly a sharp departure from previous Congressional policies. Yet the provisions and prior interpretations of the section clearly require the result outlined above. Otherwise, after conducting an investigation the Commission would have substantially less freedom in its action than if it had simply refused to consider the problem in the first place. Such a result seems contrary to the language of the statute. It would also be poor policy, since it might even encourage the Commission not to investigate doubtful cases. Thus we conclude that the decision of the Commission to terminate the investigation of the discontinuances is not an appealable Order within the meaning of 28 U.S.C. § 1336.

■ Even if we had jurisdiction to review this case as though the Commission had made an authoritative finding that the burden on interstate commerce outweighed the public need for the service, the result would be the same. It is axiomatic in cases of this kind that a decision of the Commission will not be set aside if it is supported by substantial evidence.[7]

■ The carrier introduced evidence indicating that it could achieve annual cash savings of over $1,100,000 by dropping the trains. Although there was considerable public opposition to the cutbacks in some cities, the evidence also showed that there has been a steady and substantial decline in the use of the trains involved over the past several years. There has also been continuous improvement in the alternate means of transportation. The weighing of those factors to decide whether the service should be ordered continued is the proper task of the Commission, not of this Court. Even though the Commission's conclusion might not have been the only possible one, there is certainly ample evidence in the record to support it.

■ The decision not to reopen the hearings to take additional evidence was also a matter on which the Commission has considerable discretionary power.[8] There is no showing here that the discretion was abused.

Nor is the fact that the Commission reached a contrary conclusion on similar evidence one year earlier of importance here. As has already been mentioned, the force of that prior finding expired at the end of one year and the Commission was free to approach the problem anew.

In any case, new evidence was introduced at the second hearing which showed a persistent decline in patronage and revenue since the first hearing. Since section 13a(1) requires an annual review of the need for the service which the carrier wants to terminate, Congress obviously considered that this type of evidence would often be crucial.

A reading of the first opinion of the Commission indicates that in ordering the service continued it hoped that there would be increased revenues as a result of both increased use of the service and increased fares. One year later there was no hope of improvement and discontinuance of the service was permitted.

We have considered the briefs and arguments of counsel.

We conclude that plaintiffs are not entitled to judgment setting aside and enjoining the report and order of the Commission, Division 3, dated July 18, 1963.

The complaint of plaintiffs is dismissed.

---

7. Great Northern Ry. v. United States, 209 F.Supp. 238, 240 (D.Minn.1962) and cases there cited.

8. State of Montana v. United States, 202 F.Supp. 660, 662–663 (D.Mont.1962).