Notice: This opinion is subject to formal revision before
publication in the Federal Reporter or U.S.App.D.C. Reports.
Users are requested to notify the Clerk of any formal errors in
order that corrections may be made before the bound volumes
go to press.

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 20, 2007      Decided December 28, 2007

No. 06-1191

ROBERT BIGGERSTAFF,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

———

Consolidated with
No. 06-1251

———

On Petitions for Review of an Order of the
Federal Communications Commission

———

*Christopher A. LaVoy* argued the cause for petitioner Robert
Biggerstaff. With him on the briefs were *Edward Moomjian, II*
and *Roy A. Katriel*.

*Douglas M. McKenna* argued the cause and filed the briefs pro se.

*C. Grey Pash, Jr.*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Thomas O. Barnett*, Assistant Attorney General, *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, *Samuel L. Feder*, General Counsel, Federal Communications Commission, and *Jacob M. Lewis* and *Daniel M. Armstrong*, Associates General Counsel. *James J. Fredricks*, Attorney, U.S. Department of Justice, and *John E. Ingle*, Deputy Associate General Counsel, Federal Communications Commission, entered appearances.

Before: GINSBURG, *Chief Judge*, and ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Robert Biggerstaff and Douglas McKenna filed petitions for review of a final rule of the Federal Communications Commission implementing the Junk Fax Prevention Act of 2005 ("JFPA"), Pub. L. No. 109-21, 119 Stat. 359 (codified at 47 U.S.C. § 227), by adopting an exemption to the prohibition against unsolicited telephone facsimile advertisements for entities with whom the recipient has an established business relationship ("EBR"). *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005*, 21 F.C.C.R. 3787 (2006) ("*Order*"). Neither petitioner, however, challenges the final rule itself, but rather each focuses on either a past administrative action by the Commission or the future effect of the wording of the *Order* accompanying the final rule. Biggerstaff's concern is that a 1992 administratively-created

EBR exemption, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752 (1992) ("1992 Report"), is contrary to the express text and legislative history of the Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394. Although Biggerstaff has standing and his claim is ripe, his challenge to the 1992 EBR exemption is beyond the scope of the 2006 rulemaking, which was to implement the JFPA. Therefore, we must dismiss his petition as untimely. McKenna's concern is that permissive wording in the *Order* wrongly implies that the JFPA grants statutory authority to send unsolicited faxes when an EBR only grants an exemption from federal liability under the statute. We must dismiss his petition because McKenna lacks standing. He proposes no substantive changes to the *Order* that will affect the legal rights of those who send unsolicited faxes and only speculates that textual revisions to the *Order* would reduce the number of unsolicited faxes he receives and thereby redress the harm he alleges.

## I.

In 1991, Congress enacted the TCPA, which prohibited the sending of "unsolicited advertisement[s]" to telephone facsimile machines. TCPA § 3(b)(1)(C), 105 Stat. at 2396. An unsolicited advertisement was defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 3(a)(4), 105 Stat. at 2395. The TCPA provided a private right of action for injunctive relief and monetary damages in state court. *Id.* § 3(b)(3), 105 Stat. at 2396. In a footnote to the 1992 Report implementing the TCPA, the Commission stated:

> In banning telephone facsimile advertisements, the TCPA leaves the Commission without discretion to

create exemptions from or limit the effects of the prohibition . . .; thus, such transmissions are banned in our rules as they are in the TCPA. We note, however, that facsimile transmission from persons or entities who have an [EBR] with the recipient can be deemed to be invited or permitted by the recipient.

7 F.C.C.R. at 8779 n.87 (citations omitted).

Upon reconsideration in 1995, the Commission reaffirmed its recognition of the EBR exemption, explaining "that the existence of an [EBR] establishes consent to receive telephone facsimile advertisement transmissions." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12,391, 12,408 (1995). However, in 2003, the Commission "revers[ed] [its] [] conclusion that an [EBR] provides companies with the necessary express permission to send faxes to their customers," *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14,014, 14,127 (2003) ("2003 Rule"), and instead required that "permission to send fax advertisements must be provided in writing," *id.* at 14,128. In the preamble to the 2003 Rule the Commission "emphasize[d] that, prior to the effectuation of rules contained herein, companies that transmitted facsimile advertisements to customers with whom they had [EBR]s were in compliance with the Commission's existing rules." *Id.* at 14,127 n.699. However, the 2003 Rule never went into effect; the Commission extended the effective date on several occasions, eventually doing so "[i]n light of the on-going developments in Congress . . . ." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Fax Ban Coalition Petition for Further Extension of Stay*, 20 F.C.C.R. 11,424, 11,427 (2005).

In July 2005, Congress enacted the JFPA, which amended the TCPA to codify an EBR exemption to the prohibition against unsolicited facsimile advertisements. 47 U.S.C. § 227(b)(1)(C)(i). The Commission issued a Notice of Proposed Rulemaking to implement the rule changes required by the JFPA, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Protection Act of 2005*, 20 F.C.C.R 19,758 (2005) ("2005 NPRM"), and further stayed the effective date of the 2003 Rule until the conclusion of the new rulemaking, *id.* at 19,772. Biggerstaff and McKenna filed comments in response to the 2005 NPRM and now petition for review of the *Order* promulgating the final rule.

## II.

On appeal, Biggerstaff focuses on the lingering effect of the 1992 administratively-created EBR exemption and seeks to have the court set aside that exemption on the ground that it contradicts the express text and legislative history of the 1991 TCPA. McKenna, in turn, focuses on the future effect of the JFPA's EBR exemption and seeks to have the term "permits" changed to "does not prohibit" in the *Order* in view of the statutory text, which merely exempts from federal liability those who send unsolicited facsimile advertisements on the basis of an EBR. For the following reasons, the court cannot address the merits of either petitioner's contentions.

### A.

As a threshold matter regarding the court's jurisdiction, the Commission challenges the Article III standing of both petitioners on the ground that neither can show (1) injury in fact (2) that was caused by the conduct of the Commission and (3) that can be redressed by judicial relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). We agree as to

McKenna, but not Biggerstaff.

**1.** Biggerstaff asserts that he has standing to challenge the final rule because he "has pre-JFPA junk faxes subject to the [1992] EBR administrative defense that he has refrained from suing on because of the likelihood he will face the defense." Pet'r Br. at 9. The Commission views his proffers of injury to be based on speculation both that he has a viable and timely claim under the TCPA for damages arising from a December 10, 2004 fax transmission appended to his brief and that the sender of that fax might raise an EBR defense. The Commission relies on *Platte River Whooping Crane Critical Habitat Maintenance Trust v. FERC*, 962 F.2d 27 (D.C. Cir. 1992), where the court instructed that "[a]llegations of injury based on predictions regarding future legal proceedings are . . . 'too speculative to invoke the jurisdiction of an Art[icle] III Court,'" *id.* at 35 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990)) (second alteration in original).

Biggerstaff states in a sworn declaration that he has confronted the EBR defense in previous lawsuits and is therefore likely to encounter it again:

> In my previous junk fax cases, many defendant[s] have raise[d] "established business relationship" defenses. As[] a result, I have been subject to onerous discovery requests and depositions seeking complete records of all my business contacts and transactions, such as many years of bank receipts, credit card bills and the like. This has been done by defendants attempting to "discover" any form of an "established business relationship" with me. This produces the effect of a negative suit value and effectively renders the salutary purposes of the [statute] and the protection of the statute as written by Congress as effectively useless to

me.

Decl. of Robert Biggerstaff ¶ 6 (July 23, 2007).

Unlike the standing claims presented in *Platte River* and *Whitmore*, which relied on predictions about court decisions, Biggerstaff's concern that future defendants will raise an EBR defense to pre-JFPA facsimile transmissions rests on his personal experience that such a defense is, if not certain, definitely likely. Biggerstaff's assertion of injury is thus more akin to that in *Pennell v. City of San Jose*, 485 U.S. 1 (1988), where the Supreme Court concluded that "[t]he likelihood of enforcement [of an Ordinance by tenants], with the concomitant probability that a landlord's rent will be reduced below what he or she would otherwise be able to obtain in the absence of the Ordinance, is a sufficient threat of actual injury to satisfy Art. III's requirement" that the plaintiff "'demonstrate a realistic danger of sustaining a direct injury as a result'" of the governmental action at issue, *id.* at 8 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The Court has recognized that a prediction of injury based on experience suffices to show injury in fact to the extent that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Biggerstaff's declaration and his appended unsolicited facsimile advertisement yield a claim that is more than a "vague and unsupported assertion" of injury. *Interstate Natural Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 46 (D.C. Cir. 2002). His previous experience litigating his unsolicited facsimile claims indicates that his fears that future defendants will raise the EBR defense are not "imaginary or speculative," *Younger v. Harris*, 401 U.S. 37, 42 (1971). Additionally, Biggerstaff explains that the fax appended to his brief regarding mortgage refinancing is most likely from one of several mortgage vendors he had contacted earlier in the year

when inquiring about refinancing opportunities.  He asserts that "[s]uch an entity would obviously raise a defense of an 'established business relationship'" based on Biggerstaff's initial inquiry. Biggerstaff Decl. ¶ 5.  Biggerstaff thus has established a "likelihood" of injury that rises above the level of "unadorned speculation," *Pennell*, 485 U.S. at 8.  Biggerstaff's claim is also ripe, *see Abbott Labs., Inc. v. Gardner*, 387 U.S. 136 (1967), because it involves a pure question of law and he would encounter hardship if the court were to defer making a decision, as he could not challenge the 1992 EBR exemption in a lawsuit under the TCPA in the state courts of his home state of South Carolina, *see* Reply Br. at 8 (citing *Holliday v. Staples, Inc*., 2004 WL 5349483 (S.C.C.P.)).

Therefore, because Biggerstaff has presented sufficient evidence of (1) injury in fact, (2) causation, as the 1992 EBR defense of which he complains was created by the Commission, and (3) redressability through judicial invalidation of the 1992 EBR exemption, he has standing to challenge the final rule.

**2.** McKenna states in his sworn affidavit that he is injured as a result of receiving unsolicited facsimile advertisements because these "junk faxes" take his paper and ink without his consent, interfere with his business activities, and erode the goodwill of his small business.  In his reply brief he notes that the Commission, in addressing Biggerstaff's challenge, concedes that private parties rely on the Commission's rules in deciding whether or not to take action.  Therefore, he asserts, it is likely that facsimile advertisers will rely on the wording in the *Order* to assess whether they may lawfully send faxes to people with whom they have an EBR.

Even assuming McKenna has met his burden with respect to the first two prongs of the standing requirement, he still fails to demonstrate that facsimile advertisers will respond differently

if the court were to require the Commission to revise its *Order* to strike references to "permit" and substitute "does not prohibit" in referring to the JFPA's relationship to unsolicited faxes. McKenna asserts:

> My considerable experience dealing with unsolicited fax senders, with recipients, with the press, with professional lawyers, and with the courts leads me to believe there is widespread ignorance and misunderstanding with respect to the difference between an exemption from liability in a remedial consumer protection statute and a law that actually statutorily permits conduct, even when such permission would be flat-out unconstitutional.

Aff. of Douglas M. McKenna ¶ 27 (July 10, 2007). But McKenna has proffered no evidence that a change in the wording of the *Order* will cause a change in third-party behavior. For example, he proffers no comparison between public reactions to an order using permissive language and public response to an order using words that connote an exemption from liability. The difficulty in making such a showing here is compounded by the fact that the *Order*, in addition to referring to "permitting" unsolicited faxes on the basis of an EBR, states at several points that an EBR is an "exemption to the prohibition on sending unsolicited facsimile advertisements," 21 F.C.C.R. at 3788; *id*. at 3791; *see also id.* at 3793. In contrast to Biggerstaff's circumstances with regard to confronting the EBR defense in state litigation, McKenna's assertions about what third parties understand and how they might react to a revised *Order* is far more tenuous and too speculative to show redressability.

Therefore, because McKenna fails to show that he has standing to challenge the final rule, we must dismiss his petition.

**B.**

A procedural hurdle bars our consideration of Biggerstaff's contention that the court should set aside the 1992 administratively-created EBR exemption because the Commission lacked authority to adopt it. Biggerstaff has not petitioned for a rulemaking to modify the 1992 EBR exemption, which "ordinarily" is "the appropriate way in which to challenge a longstanding regulation on the ground that it is 'violative of statute,'" *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1214 (D.C. Cir. 1996) (quoting *Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 152 (D.C. Cir. 1990)); *see also Geller v. FCC*, 610 F.2d 973, 978 (D.C. Cir. 1979). Therefore, for the court to examine the merits of his contention, Biggerstaff must demonstrate that in the 2006 rulemaking the Commission reopened consideration of its authority to adopt the 1992 EBR exemption, for otherwise his challenge is untimely. *See* 47 U.S.C. § 402(a); 28 U.S.C. §§ 2342(1), 2344; *see also Cellular Telecomm. & Internet Ass'n v. FCC*, 330 F.3d 502, 504 (D.C. Cir. 2003). The Commission's intention to initiate a reopening must be clear from the administrative record, *see Charter Communications, Inc. v. FCC*, 460 F.3d 31, 38 (D.C. Cir. 2006), and we find no such intention in the 2006 rulemaking.

An agency's reconsideration of a rule in a new rulemaking constitutes a reopening when the original rule is "reinstated" so as to have renewed effect. *Public Citizen*, 901 F.2d at 152. In *Ohio v. EPA*, 838 F.2d 1325 (D.C. Cir. 1988), the court determined that it could review the validity of a rule promulgated three years before the challenged rule because "the period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection," *id.* at 1328. The court relied on *Montana v. Clark*, 749 F.2d 740 (D.C. Cir. 1984), which held that the "time for seeking review ran

anew from the time of re-promulgation because the agency 'held out [a provision in a prior rule] as a proposed regulation, offered an explanation for its language, solicited comments on its substance, and responded to the comments in promulgating the regulation in its final form.'" *Ohio v. EPA*, 838 F.2d at 1328 (quoting *Montana v. Clark*, 749 F.2d at 744). Thus, an official reinterpretation of an old rule that creates a new opportunity to challenge the continuation of that rule triggers reopening. *See General Motors Corp. v. EPA*, 363 F.3d 442, 449-50 (D.C. Cir. 2004).

Biggerstaff maintains that the 2005 NPRM implicitly reopened consideration of the 1992 administratively-created EBR exemption by inviting comments on "any other issues that relate to the sender's ability to send facsimile advertisements to persons with whom an EBR was formed prior to enactment of the [JFPA]," 20 F.C.C.R. at 19,763. But Biggerstaff takes this statement out of context and mischaracterizes the Commission's purpose. The JFPA requires that a sender transmitting a facsimile advertisement on the basis of an EBR must have obtained the fax number through either "the voluntary communication of such number, within the context of such [EBR]" or "a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution." 47 U.S.C. § 227(b)(C)(ii). An exception exists if the EBR was in existence and the sender possessed the fax number prior to the JFPA's date of enactment, in which event the sender need not demonstrate how it obtained the number. *Id.* The 2005 NPRM sought comment on how to "verify that a sender had an EBR and recipient's facsimile number prior to July 9, 2005." 20 F.C.C.R. at 19,763. This statement is not fairly understood as an attempt by the Commission to examine its statutory authority to create the pre-JFPA EBR exemption; it was made in an effort to implement the new statutory mandate. Nor does the reference

in the *Order* accompanying the final rule, noting that Biggerstaff and others "oppose an EBR exemption for fax advertising," 21 F.C.C.R. at 3793 & n. 43, suggest that the Commission reconsidered the validity of the 1992 EBR exemption, especially given that the Commission's response to the objection referred only to its "mandate [] to implement the statute as enacted by Congress," that will help "prevent future unwanted faxes," *id.* "[A]n agency [does not] reopen an issue by responding to a comment that addresses a settled aspect of some matter, even if the agency had solicited comments on unsettled aspects of the same matter." *Kennecott*, 88 F.3d at 1213.

Biggerstaff also maintains that a Notice of Proposed Rulemaking in 2002, *see In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 F.C.C.R. 17,459 (2002) ("2002 NPRM"), which resulted in the prospective revocation of the 1992 EBR exemption, reopened consideration of that exemption by inviting comments on whether the Commission should continue to recognize the EBR defense. The parties agree that the 2005 NPRM incorporated the 2002 NPRM. *See* Resp't Br. at 15; Pet'r Reply Br. at 15. In 2002, because "telemarketing practices ha[d] changed significantly" since 1991, 17 F.C.C.R. at 17,460, the Commission sought comment on "whether the Commission's rules need to be revised in order to more effectively carry out Congress's directives in the TCPA," *id.* at 17,461. Specifically, the 2002 NPRM solicited comment on "the Commission's determination that a prior business relationship between a fax sender and recipient establishes the requisite consent to receive telephone facsimile advertisement transmissions." *Id.* at 17,483.

But although the 2002 NPRM did reconsider the 1992 EBR exemption, instead of "reaffirm[ing]" it, *Public Citizen*, 901 F.2d at 151, and "re-promulgat[ing]" it, *Ohio v. EPA*, 838 F.2d at 1328, the Commission revoked it altogether, *see* 2003 Rule,

18 F.C.C.R. at 14,127. The Commission's prospective rescission of the EBR exemption in 2003 places Biggerstaff's challenge to that exemption outside the scope of the 2006 rulemaking. Given the absence of any indication in either NPRM that the Commission intended to re-examine its statutory authority in 1992 to adopt an EBR exemption, there is no basis for the court to conclude that the Commission reopened the issue in the 2006 rulemaking. *See Charter Communications*, 460 F.3d at 38; *see also FCC v. Schreiber*, 381 U.S. 279, 289 (1965). The enactment of the JFPA and its deadline for the promulgation of regulations, *see* JFPA § 2(h), 119 Stat. at 362, were reason enough for the Commission to confine its 2006 rulemaking to implementing the JFPA. Further, given an agency's obligation under the Administrative Procedure Act to provide notice of a proposed rulemaking that is "adequate to afford interested parties a reasonable opportunity to participate in the rulemaking process," *Florida Power & Light Co. v. United States*, 846 F.2d 765, 771 (D.C. Cir. 1988) (internal quotation marks omitted); *see* 5 U.S.C. § 553(b), had the Commission also intended to rescind the 1992 administratively-created EBR exemption retroactively, it is unclear how interested parties who have relied on the EBR exemption in past transactions would have been put on notice.

Accordingly, because Biggerstaff's challenge to the validity of the 1992 EBR exemption falls outside the scope of the 2006 rulemaking, and because McKenna lacks Article III standing, we dismiss the petitions.