Sherman **GOTTLIEB**, Plaintiff,

v.

**CARNIVAL CORPORATION,**
Defendant.

No. 04 Civ. 4202 **(ILG).**

United States District Court,
E.D. New York.

July 21, 2009.

Andre K. Cizmarik, Anthony J. Viola, Edwards Angell Palmer & Dodge LLP, New York, NY, for Plaintiff.

Joseph J. Saltarelli, Hunton & Williams LLP, New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

GLASSER, Senior District Judge:

 The plaintiff and the defendant move for reconsideration of the Court's Memorandum and Order dated February 5, 2009, *see Gottlieb v. Carnival Corp.,* 595 F.Supp.2d 212 (E.D.N.Y.2009) (the "2009 Order"), pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.[1] Reconsideration of an order is appropriate "to correct a clear error or prevent a manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). The decision to grant or deny this motion is within the sound discretion of this Court. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983).

### 1. Plaintiff's Telephone Consumer Protection Act claim

The Telephone Consumer Protection Act of 1991 ("TCPA"), Pub.L. No. 102–243, declares it "unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . [and] to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. . . ." The term "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." The TCPA requires the Federal Communications Commission ("FCC") to "prescribe regulations to implement the requirements of this subsection" and permits the FCC to make exemptions only to the prohibition against telephone calls using an artificial or prerecorded voice.

The FCC nevertheless created an exemption to the prohibition of unsolicited fax advertisements by way of an *ipse dixit* in a "Report and Order" published in 1992 entitled *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 7 F.C.C.R. 8752 (1992) ("1992 Report and Order"). In footnote 87 of that Report and Order, the FCC stated that:

[i]n banning telephone facsimile advertisements, the TCPA leaves the Commission without discretion to create exemptions from or limit the effects of the prohibition; thus, such transmissions are banned in our rules as they are in the TCPA. We note, however, that facsimile transmission from persons or entities who have an established business relationship with the recipient can be

---

1. Local Rule 6.3 reads, in pertinent part, "[a] notice of motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion. . . . There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. . . . No oral argument shall be heard unless the court directs that the matter shall be reargued orally."

deemed to be invited or permitted by the recipient. See para. 34, supra.

*Id.* at 8784 n. 87.[2] The FCC defines an established business relationship ("EBR") as:

> a prior existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(4) (as cited in the 1992 Report and Order, 7 F.C.C.R. at 8793).

In November 2004, plaintiff Sherman Gottlieb brought a cause of action pursuant to the TCPA against defendant Carnival Corporation ("Carnival") and alleged that, between 2000 and 2003, Carnival had faxed him approximately 1000 unsolicited cruise advertisement fliers. After discovery was conducted, Gottlieb moved for summary judgment of the TCPA claim in July 2007. Carnival cross-moved for summary judgment in August 2007. By way of a defense to the TCPA claim, Carnival argues that it had an EBR with Gottlieb and that, pursuant to footnote 87 of the FCC's 1992 Report and Order, Carnival did not need Gottlieb's express invitation or permission to fax him the cruise fliers. Gottlieb argues in response that he did not have an EBR with Carnival and, alternatively, that even if he had an EBR with Carnival, the EBR exemption as articulated in the 1992 Report and Order is contrary to the express prohibition of Congress and therefore has no efficacy.

In its 2009 Order, the Court granted Gottlieb's motion for summary judgment and denied the defendant's cross-motion for summary judgment. The Court held that the EBR exemption was plainly contrary to the express language of the TCPA and, pursuant to *Chevron USA, Inc. v. Nat'l Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984),[3] did not warrant the Court's deference. Carnival now moves for reconsideration of that Order and argues that the Court overlooked 28 U.S.C. § 2342 which, according to Carnival, gives courts of appeals exclusive jurisdiction to invalidate the EBR exemption. Section 2342 reads:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
>
> (1) all *final orders* of the Federal Communications Commission made reviewable by section 402(a) of title 47;

---

**2.** The Commission's divining an invitation to receive an unsolicited fax from a sender with whom he had an EBR is curious given its recognition in the preceding sentence in the same footnote that "[i]n banning telephone facsimile advertisements, *the TCPA leaves the Commission without discretion to create exemptions from or limit the effects of the prohibition.*" (emphasis added). In paragraph 34, referenced in that footnote, the Commission observes that "the legislative history indicates that the TCPA does not intend to unduly interfere with ongoing business relationships. FN

62." Interestingly, footnote 62 references a House Report which does, indeed, contain that sentence but makes no reference to a Senate Report, *see* S. Rep. 102–178 at 8, that recognized that the final bill did not include an exemption for fax advertisements.

**3.** "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778.

(2) all final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7, except orders issued under sections 210(e), 217a, and 499g(a) of title 7;

(3) all *rules, regulations, or final orders* of—

(A) the Secretary of Transportation issued pursuant to section 50501, 50502, 56101–56104, or 57109 of title 46 or pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49; and

(B) the Federal Maritime Commission issued pursuant to section 305, 4 1304, 41308, or 41309 or chapter 421 or 441 of title 46;

(4) all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42;

(5) all *rules, regulations, or final orders* of the Surface Transportation Board made reviewable by section 2321 of this title;

(6) all final orders under section 812 of the Fair Housing Act; and

(7) all final agency actions described in section 20114(c) of title 49.

Jurisdiction is invoked by filing a petition as provided by section 2344 of this title.

(emphasis added).[4] Section 2342(1) thus grants courts of appeals exclusive jurisdic-

tion to review all *final orders* of the FCC that are reviewable under § 402(a) which also speaks of "orders":

Judicial review of Commission's orders and decisions.

(a) Procedure. Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter . . . shall be brought as provided by and in the manner prescribed in [§ 2342].

When this Court issued the 2009 Order, it relegated discussion of § 2342 and § 402(a) to a footnote:

The defendant argues that this Court does not have jurisdiction to set aside the FCC interpretation at issue because 28 U.S.C. § 2342 provides that the "court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend . . . or determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." This argument fails to distinguish between FCC orders and FCC interpretations of federal statutes. *See Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396–97 (9th Cir.1996) (the court of appeals has exclusive jurisdiction to review the validity of FCC *rulings* ). While the former may only be challenged pursuant to § 2342, the latter do not deserve the Court's deference if

---

**4.** Section 2344 of title 28 in turn states:

On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States. The petition shall contain a concise statement of—

(1) the nature of the proceedings as to which review is sought;

(2) the facts on which venue is based;

(3) the grounds on which relief is sought; and

(4) the relief prayed.

The petitioner shall attach to the petition, as exhibits, copies of the order, report, or decision of the agency. The clerk shall serve a true copy of the petition on the agency and on the Attorney General by registered mail, with request for a return receipt.

clearly in conflict with the intent of Congress.

2009 Order, 595 F.Supp.2d at 219 n. 5.

The defendant now moves for the Court to reconsider that Order and hold that it lacked the jurisdiction to invalidate the EBR exemption.

## 2. The Court lacked jurisdiction

■ While the defendant's characterization that it had "extensively briefed" this jurisdictional issue in its previous memoranda may be seriously questioned, *see* Defendant's Memorandum of Law in Support of the Motion for Reconsideration ("Def. Mem. Recon."), dated Feb. 20, 2009, at 3, the Court nevertheless now holds that it did overlook some relevant authority and that, as a result, it erred in concluding that the EBR exemption did not constitute a "final order" within the meaning of 28 U.S.C. § 2342 and 47 U.S.C. § 402(a). The Court upon reconsideration now holds that, because the EBR exemption is a "final order," this Court did not have jurisdiction to invalidate the EBR exemption and must apply it as if it were part and parcel of the TCPA.

Section 2342(1) speaks of "final orders" of the FCC that are reviewable under § 402(a) of title 47 which itself refers to FCC "orders." Neither § 2342 nor § 402(a) define what an "order" is, but § 2342, when parsed in its entirety, does imply one. Subsections (3) and (4) of § 2342 provide for appellate court review of "all rules, regulations, or final orders" of the Secretary of Transportation, the Federal Maritime Commission, and the Surface Transportation Board. The absence of "rules" and "regulations" from subsection (1) and the inclusion of those terms in subsections (3) and (4) suggest that, in enacting § 2342, Congress distinguished rules and regulations from "final orders."

Judge Daniels of the Southern District of New York made just such an observation in *United States v. Any and All Radio, Station Transmission Equip. et al.,* 00 Civ. 0893(GBD), 2004 WL 2848532, at *9 (S.D.N.Y. Dec. 9, 2004). Commenting that he had seen no case law supporting the proposition that FCC regulations were "final orders" pursuant to § 2342, he noted, "[i]ndeed, when Congress wanted to grant the Court of Appeals exclusive jurisdiction over *regulations* or *rules,* it has stated so.... Had Congress intended to confer exclusive jurisdiction to the Court of Appeals over FCC *regulations* and *rules* in addition to *final orders,* as it did with other agencies, Congress would have stated so." *Id.* (emphasis in the original). Judge Titus of the District of Maryland was of a similar mind in *Baltimore–Washington Tel. Co. v. The Hot Leads Co., LLC,* 584 F.Supp.2d 736, 743 (D.Md.2008). He held that the defendants in that case were "incorrect in arguing that the Court may not determine the validity of an FCC regulation. Although the courts of appeals do have exclusive jurisdiction to determine the validity of FCC final *orders* ... the challenge here is to a 'rule' or 'regulation,' not an order. Under the plain meaning of § 2342(1), the Court is not precluded from determining the validity of the challenged regulation." *Id.* (emphasis in the original).[5]

The Court also observes that the Administrative Procedures Act of 1947 ("APA") defines "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing," 5 U.S.C. § 551(6), and distinguishes it from a "rule" which is defined as "the whole or a part of any agency statement of general

---

**5.** Neither *Any and All Radio* nor *Baltimore–* *Washington* were the subject of an appeal.

or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency .... " § 551(4). The clear import from of that definition of "order" is the resolution of a dispute between parties.

The conclusion that Judges Daniels and Titus reached that, given the clear language of § 2342, a district court may determine the validity of an FCC rule or regulation was called into question by the Supreme Court in *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942), which decided that an "order" within the meaning of § 402(a) includes any order promulgating rules and regulations pursuant to the FCC's rulemaking powers. That case concerned the FCC's chain broadcasting regulations which required the FCC to refuse to grant or renew a license to any broadcasting station which entered into certain contracts with television networks. The petitioner, the television network more commonly known as "CBS," found the chain broadcasting regulations to be to its disadvantage. Although the FCC had not issued any order to enforce those regulations, CBS sought to have them judicially reviewed and argued that they were unlawful.

Throughout its opinion, the Court elucidated a clear distinction between an "order" and a "rule" or "regulation." Several observations manifesting an awareness of that distinction are:

[s]ince the Commission's order neither grants, denies, nor modifies any license, any review ... must be under § 402(a), and then only if the Commission's order promulgating the regulations is an 'order' within the meaning this section. The particular label placed upon it by the Commission is not necessarily conclusive, for it is the substance of what the Commission has purported to do and has done which is decisive.

*Id.* at 416, 62 S.Ct. 1194;

[t]he *order* is thus in its genesis and on its face, and in its practical operation, an *order* promulgating *regulations* which operate to control such contractual relationships, and it was adopted by the Commission in the avowed exercise of its *rule-making power.*

*Id.* at 417, 62 S.Ct. 1194 (emphasis added); [6]

"reviewable *orders* are an exercise either of the quasi judicial function of determining controversies or of the delegated legislative function of rate making and *rule* making...."

*Id.* at 420, 62 S.Ct. 1194 (quoting *United States v. Los Angeles S.L. R.R.,* 273 U.S. 299, 310, 47 S.Ct. 413, 71 L.Ed. 651 (1927)) (emphasis added);

"[h]ere the Commission exercised its rule-making powers by adopting regulations...."

*Id.*

An emphasis upon "the substance of what the Commission has purported to do," *id.* at 416, 62 S.Ct. 1194, would have led the Court to conclude that the Com-

---

**6.** The Court stated further that:

[m]ost rules of conduct having the force of law are not self-executing but require judicial or administrative action to impose their sanctions with respect to particular individuals. Unlike an administrative order or a court judgment adjudicating the rights of individuals, which is binding only on the parties to the particular proceeding, a valid exercise of the rule-making power is addressed to and sets a standard of conduct for all to whom its terms apply. It operates as such in advance of the imposition of sanctions upon any particular individual. 316 U.S. at 418, 62 S.Ct. 1194.

mission was declaring a "regulation," as that term is understood, and not promulgating an "order." That notwithstanding, the Court held that "the regulations ... are an exercise of the rule-making power, and because they presently determine rights on the basis of which the Commission is required to withhold licenses and authorized to cancel them, that there is an order within the meaning of § 402(a)...." *Id.* at 421–22, 62 S.Ct. 1194.

Given the Supreme Court's pronouncement that an order promulgating rules and regulations is an "order" under § 402(a), the Court of Appeals for the Second Circuit has assumed exclusive jurisdiction to review FCC Report and Orders that promulgate rules and regulations. *See, e.g., Kahn v. iBiquity Digital Corp.,* 309 Fed. Appx. 429, 431 (2d Cir.2009) (summary order) (holding that, pursuant to § 2342(1) and § 402(a), the court lacked jurisdiction to hear a challenge to any "FCC regulatory action" "absent a petition for review"); *People of the State of N.Y. & Pub. Serv. Comm'n of the State of N.Y. v. FCC,* 267 F.3d 91, 94 (2d Cir.2001) (petitioner challenged authority of FCC to promulgate rules articulated in a Report and Order regarding area codes and ten-digit dialing); *GTE Serv. Corp. v. FCC,* 474 F.2d 724, 726 (2d Cir.1973) (petitioner sought review of an FCC order promulgating rules relating to computer data processing services and argued, *inter alia,* that the FCC lacked authority to create the rules). Other circuits have done the same. *See Time Warner Telecom, Inc. v. FCC,* 507 F.3d 205, 208 n. 2 (3d Cir.2007) (review of an FCC Report and Order that substantially limited federal regulation of high-speed internet access over telephone lines); *GTE South, Inc. v. Morrison,* 199 F.3d 733, 742–43 (4th Cir.1999) (holding that a party could not use an appeal from a district court to circumvent the Hobbs

Act's requirement that a challenge to FCC rules promulgated in a Report and Order is subject only to direct review in a court of appeals upon petition); *Alenco Commc'ns, Inc. v. FCC,* 201 F.3d 608, 614 (5th Cir.2000) (holding that the court had jurisdiction pursuant to the Hobbs Act to review whether two FCC Report and Orders were consistent with the Telecommunications Act of 1996); *Illinois Bell Tel. Co. v. FCC,* 740 F.2d 465, 467 (7th Cir. 1984) (commenting that § 2342 "vests the courts of appeals with exclusive jurisdiction to review certain orders issued by the [FCC] ... including orders promulgating rules" and citing *Columbia Broadcasting,* 316 U.S. 407, 62 S.Ct. 1194); *Iowa Utils. Bd. v. FCC,* 219 F.3d 744 (8th Cir.2000) (reviewing FCC rules promulgated in a Report and Order pursuant to § 402(a) and § 2342); *US West Commc'ns, Inc. v. Hamilton,* 224 F.3d 1049, 1055 (9th Cir. 2000) (holding that one paragraph of a massive Report and Order "must be understood as a final order subject to the Hobbs Act."); *Qwest Commc'ns Int'l, Inc. v. FCC,* 240 F.3d 886, 889 (10th Cir.2001) (holding that the court's jurisdiction to review two FCC Report and Orders arises from § 402(a) and § 2342); *Teledesic LLC v. FCC,* 275 F.3d 75 (D.C.Cir.2001) (holding that an FCC Report and Order was final and reviewable under § 402(a)).

Moreover, the Court of Appeals for the District of Columbia implicitly held in *Biggerstaff v. F.C.C.,* 511 F.3d 178 (D.C.Cir. 2007), that the FCC's EBR exemption was a "final order" within the meaning of § 2342. In that case, the petitioner sought review of the FCC's EBR rule on the grounds that it was contrary to the express language of the TCPA and that the FCC did not have authority to adopt it. *See id.* at 181–184. The Court of Appeals held that Biggerstaff's petition was un-

timely under § 2344 [7] because it was not made within 60 days of the 1992 Report and Order articulating the EBR exemption or within 60 days of any other Report and Order that had reexamined the EBR exemption. *See id.* at 186. By requiring a challenge to the EBR rule to comply with the Hobbs Act, the court implicitly recognized that the EBR rule was a "final order" within the meaning of § 2342.

Notwithstanding this Court's reading of §§ 2342 and 402(a) which assigns to the words "orders," "rules," and "regulations" their plain meaning, it must obey the Supreme Court's holding in *Columbia Broadcasting* which conflates their meaning and thus extinguishes the difference between them.[8] Obedience to that higher authority commands the Court to acknowledge that it erred in deciding that it had jurisdiction to invalidate the EBR exemption.[9]

### 3. Motions for summary judgment of the TCPA claim

■ Turning to the case at bar, for the reasons stated, the Court must now apply the EBR exemption when determining the motions for summary judgment. Again, the FCC defines an established business relationship as:

> a prior existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential subscriber regarding products or services offered

by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(4) (as cited in the 1992 Report and Order, 7 F.C.C.R. at 8793). With this definition in mind, the Court holds that disputed issues of fact remain that preclude the Court from granting either the plaintiff's or the defendant's motion for summary judgment. First, there remains a question as to whether "a prior existing relationship" was formed between Gottlieb and Carnival by "a voluntary two-way communication," and there remains the additional question as to whether that relationship was terminated by Gottlieb and, if so, when. The cross-motions for summary judgment of the plaintiff's claim pursuant to the TCPA are therefore denied.

### 4. Section 396–aa of New York General Business Law

■ The plaintiff also brought a claim against Carnival pursuant to the New York State anti-fax statute, N.Y. Gen. Bus. Law § 396–aa. Both parties moved for summary judgment of that claim, and in its 2009 Order, the Court denied both motions and instead declined to exercise supplemental jurisdiction over the § 396–aa claim because, with the disposition of the TCPA claim, there was no longer a federal cause of action to which it could attach. The plaintiff and defendant now assert that the Court erred and move for reconsideration of that Order. They are correct. The Court erred. The Court has

---

7. *See* n. 6, *supra.*

8. *See also* Lewis Carroll, *Through the Looking Glass*, Ch. VI (" 'when I use a word,' Humpty Dumpty said, . . . 'it means just what I choose it to mean—neither more nor less.' 'The question is,' said Alice, 'whether you *can* make words mean so many different things.' ").

9. The rationale underlying §§ 2342 and 402(a) which permits only a Court of Appeals to declare invalid an FCC rule, regulation, or order which the relevant statute explicitly forbids it to promulgate is difficult to discern.

subject matter jurisdiction over that state claim pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. *See* Amended Complaint ¶ 4. Therefore, the Court must now address the parties' motions for summary judgment regarding the plaintiff's § 396–aa claim.

Subsection (1) of § 396–aa, as it read prior to its amendment in 2008, *see* 1989 N.Y. Sess. Law Serv. 597 (McKinney), provided that "[i]t shall be unlawful for a person, corporation, partnership or association to initiate the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages." The New York statute has its own EBR exemption: "[t]his section shall not apply to telefacsimile messages sent to a recipient with whom the initiator has had a prior contractual or business relationship." *Id.* The statute also exempts "transmissions not exceeding five pages received between the hours of 9:00 P.M. and 6:00 A.M. local time." *Id.* The transmission of unsolicited promotional faxes remains unlawful notwithstanding their length, the time of transmission, or the relationship of the parties if the recipient has previously indicated to the initiator by any verbal, written, or electronic means that he does not want to receive any faxes. *Id.* Subsection (2) of § 396–aa provides for a private cause of action to recover actual damages or $100 per fax, whichever is greater.

The crux of Carnival's motion for summary judgment is that § 396–aa prohibits only intrastate faxes and not interstate faxes. *See* Def. Mem. 2007 at 28 ("case law, the legislative history of the TCPA, and authoritative FCC interpretations all render it indisputable that § 396–aa does not apply to the purely interstate faxes at issue in this case."). The defendant relies on the TCPA's legislative history which

evidences that it was enacted to address the concern that, because states could not regulate interstate calls and faxes, telemarketers could evade state prohibitions by adopting interstate telemarketing practices. *See id.* at 28–29 (citing Pub.L. No. 102–243 § 2(7); S. Rep. 102–178, 1991 U.S.C.C.A.N.1968, 1969; 137 Cong. Rec. S18781, S18784; Cong. Rec. S16025 (Nov. 7, 1991)).

Carnival also relies on this Court's 2005 Memorandum and Order ("2005 Order") in which the Court dismissed the § 396–aa claim on two grounds. *See* 367 F.Supp.2d 301, 309–11. The first was for lack of subject matter jurisdiction. The plaintiff had not alleged that the amount in controversy was $75,000 or greater as required by 28 U.S.C. § 1332(a). The second speaks directly to the present inquiry. The Court held that § 396–aa prohibited only intrastate unsolicited fax advertisements and dismissed the claim pursuant to Fed.R.Civ.P. 12(b)(6) because Gottlieb had alleged only interstate faxes. *See* 367 F.Supp.2d at 310. This Court was persuaded by the TCPA's legislative history which "indicate[d] that Congress acted pursuant to the Commerce Clause to prohibit interstate communications where the states could not act because they lacked jurisdiction." *Id.* (citing U.S. Const. Art. I, § 8, cl. 3). This Court also relied on a number of cases that had observed that the TCPA's legislative history evinced Congress's belief that states lacked jurisdiction to regulate interstate communications. *See Van Bergen v. Minn.,* 59 F.3d 1541, 1548 (8th Cir.1995) (citing § 227, Congressional Statement of Findings (7)); *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs. Ltd.,* 156 F.3d 432, 437 (2d Cir.1998) (citing S.Rep. No. 178 at 3); *ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 515 (3d Cir.1998) (citing *Van Bergen,* 59 F.3d at 1548); *Int'l Science & Tech. Institute, Inc.*

*v. Inacom Commc'ns, Inc.,* 106 F.3d 1146, 1154 (4th Cir.1997) (citing Pub.L. No. 102–243, § 2(7)); *Schulman v. Chase Manhattan Bank,* 268 A.D.2d 174, 176, 710 N.Y.S.2d 368 (N.Y.App.Div.2000) (citing S.Rep. No. 178 at 3). The Court concluded that "[w]hile ... § 396–aa does not expressly limit its application to claims based on intrastate facsimiles ... the Court is persuaded to join the weight of authority holding that state laws such as § 396–aa apply only to intrastate communications in view of Congress's intent that the TCPA extend the reach of state laws by regulating interstate communications." 367 F.Supp.2d at 311.

The 2005 Order was appealed, and the Second Circuit vacated the dismissal of the § 396–aa claim on the grounds that the court did have subject matter jurisdiction. The Second Circuit took no position as to the Court's ruling that § 396–aa applied only to intrastate faxes other than to say that "New York's statute does not, on its face, limit itself in the way the district court, relying on the purpose of the TCPA as expressed in the statute's legislative history, suggested." *See Gottlieb v. Carnival Corp.,* 436 F.3d 335, 343 (2d Cir. 2006). The panel also added, by way of a footnote, that "although federal legislators apparently believed that states do not have jurisdiction over interstate calls, it is also *possible* that federal courts would have diversity jurisdiction over state-law claims involving interstate calls and parties of diverse citizenship. This Court is aware of no reasoned legal analysis supporting the

belief expressed in the congressional reports that state laws could not reach such unsolicited, interstate advertisements." *Id.* at 343 n. 9. (emphasis in the original). These comments help to inform the Court's discussion below.

▪ Rather than follow Carnival's suggestion that the Court reach the same conclusion as it did in the 2005 Order by way of the same reasoning, the Court will now reexamine whether a cause of action pursuant to § 396–aa lies when the faxes at issue were transmitted across state lines. First, the Court must determine *what* the New York legislature intended to regulate by way of § 396–aa. On its face, the statute regulates the "unsolicited transmission of telefacsimile messages" and defines "telefacsimile" as *"every* process in which electronic signals are transmitted by telephone lines for conversion into written text." (emphasis added). The statute does not expressly limit itself to intrastate faxes as this Court observed in the 2005 Order and the Second Circuit observed upon review of that Order. *See* 436 F.3d at 343, 367 F.Supp.2d at 311. In fact, the broad definition of "telefacsimile" plainly implies the opposite: the intent is to regulate *all* faxes. The Court is not aware of any legislative history or judicial commentary to suggest that the statute means something other than what it plainly says and that the New York legislature did not intend to regulate all unsolicited faxes.[10]

▪ If § 396–aa regulates interstate faxes as well as intrastate faxes, then a

---

10. Gottlieb highlights the sentence in § 396–aa which creates an exemption for faxes "received between the hours of 9:00 P.M. and 6:00 A.M. *local time."* Pl. Reply 2007 at 27 (emphasis in the original) (quoting § 396–aa). He argues that, because New York is located in only one time zone, "[t]he New York State legislature would not have included the reference to "local time" unless it had contemplat-

ed the possibility of faxes being sent from outside of New York, i.e., the legislature intended the statute to apply as well to *interstate* faxes." *Id.* Although the Court finds such an inference tenuous, the inclusion of "local time" certainly does not in anyway imply that the statute was intended to regulate only intrastate faxes.

cause of action lies unless it is preempted from regulating interstate faxes by the TCPA. The Supreme Court discussed federal preemption of state law in *English v. General Electric Co.*, 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990),[11] and stated that:

> state law is preempted under the Supremacy Clause, U.S. Const., Art. VI, Cl. 2, in three circumstances. First, Congress can define explicitly the extent to which its enactments pre-empt state law. Preemption is fundamentally a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.

*Id.* at 79, 110 S.Ct. 2270. Subsection (e) of the TCPA, see Pub.L. No. 102–243, is the statute's only provision which speaks to preemption. It states:

> (e) Effect on State Law. (1) State Law Not Preempted. Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits (a) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements. . . .

Subsection (e) is therefore a savings clause which permits states to regulate intrastate faxes more restrictively than Congress chooses to regulate them. Its reference to subsections (d) and (e)(2) provides that state law is expressly preempted in two respects. Subsection (d) preempts state law from regulating certain technical and procedural standards for, *inter alia*, fax machines for the purpose of establishing national standards.[12] Paragraph 2 of subsection (e) requires the FCC to establish a single, national do-not-call registry and prohibits any state or local authority from

**11.** *See also Marsh v. Rosenbloom*, 499 F.3d 165, 177 (2d Cir.2007) ("The Supreme Court has identified three situations that show congressional intent to preempt state law: (1) where Congress expressly states its intent to preempt; (2) where Congress's scheme of federal regulation is sufficiently comprehensive to give rise to a reasonable inference that it leaves no room for the state to act; and (3) where state law actually conflicts with federal law.").

**12.** Subsection (d) states, in pertinent part:
d) TECHNICAL AND PROCEDURAL STANDARDS.—
(1) PROHIBITION.—It shall be unlawful for any person within the United States—
(A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards; or
(B) to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.
(2) TELEPHONE FACSIMILE MACHINES.—The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after the date of enactment of this section clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual.

requiring the use of any database that does not incorporate the federal registry. Nothing in this provision or, for that matter, any other provision in the TCPA expressly preempts a state law such as § 396–aa that regulates interstate communications.

◼ "[I]n the absence of explicit statutory language," the Supreme Court in *English* continued:

> state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where and Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

496 U.S. at 79, 110 S.Ct. 2270. The Court holds that it was not Congress's intent to preclude states from supplementing federal regulation of telemarketing and unsolicited faxes with regulation of their own. Just the opposite is true. As the Second Circuit stated in its decision vacating the 2005 Order, "[t]he legislative history indicates that Congress intended the TCPA to provide 'interstitial law preventing evasion of state law by calling across state lines.' Congress thus sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." 436 F.3d at 342 (quoting *Van Bergen*, 59 F.3d at 1548); *see also ErieNet*, 156 F.3d at 515 ("the statute does not appear to reflect an attempt by Congress to occupy this field of interstate communication or to promote national uniformity of regulation."). The defendant has not advanced any authority—nor is the Court aware of any authority—to support the view that the TCPA's purpose was to exclusively regulate interstate telemarketing calls and unsolicited faxes.

It is of no moment that Congress may have *believed* that, because states lacked jurisdiction, a federal law was needed to regulate interstate communications. Carnival points to the pronouncements in the TCPA's legislative history as to the reach of state telemarketing laws and finds them dispositive of whether Congress intended to exclusively regulate interstate communications. *See* Def. Mem. at 28–29; Def. Reply 2007 at 24. That belief does not, in and of itself, establish that Congress intended to exclusively regulate interstate communications—a suggestion that is belied by the legislative history which shows that the TCPA was intended to be interstitial. Moreover, that belief is not necessarily a correct one. The Second Circuit questioned its merit when stating that "although federal legislators apparently believed that states do not have jurisdiction over interstate calls, it is also *possible* that federal courts would have diversity jurisdiction over state-law claims involving interstate calls and parties of diverse citizenship. *This Court is aware of no reasoned legal analysis supporting the belief expressed in the congressional reports that state laws could not reach such unsolicited, interstate advertisements.*" 436 F.3d at 343 n. 9 (first emphasis in the original, second emphasis added). This Court, too, is unaware of any such support.

As to the third category of preemption, the Supreme Court stated in *English* that:

> state law is pre-empted to the extent that it actually conflicts with federal law. Thus the Court has found pre-emption where it is impossible for a private party to comply with both state and federal

requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*English,* 496 U.S. at 79, 110 S.Ct. 2270 (internal citations and quotation marks omitted). It would certainly not be *impossible* for a party to comply with both the TCPA and § 396–aa, and § 396–aa does not stand as an obstacle to the implementation of Congress's intent. When the TCPA and its implementing regulations are compared with § 396–aa, federal and state law appears to be quite similar. Both prohibit the transmission of unsolicited faxes that advertise goods or services; both provide for an EBR exemption; and both allow the recipient to terminate his or her EBR by conveying to the initiator that he or she does not want to receive any more solicitous faxes. The statutes do differ, too, but only in minor respects. Unlike the TCPA, § 396–aa does not prohibit unsolicited faxes that are transmitted between 9:00 p.m. and 6:00 a.m. and are less than five pages long, and the state statute provides for a smaller statutory damages amount than the federal statute. In all, however, there is no basis to conclude that the TCPA and § 396–aa conflict.

The absence of conflict here is illustrated by *Chamber of Commerce v. Lockyer,* No. 05 Civ. 2257(MCE), 2006 WL 462482, at *8 (E.D.Cal. Feb. 27, 2006), in which the district court considered whether the California anti-fax law was preempted by the TCPA to the extent that it regulated interstate faxes. The California statute did not contain an exemption for EBRs and therefore prohibited unsolicited faxes to a greater extent than the TCPA which had, by that point, been amended by the Junk Fax Prevention Act of 2005 ("JFPA") to include an EBR exemption. *See id.* at *5. The district court held that the state statute was preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress because it eliminates the established business relationship exception that Congress had expressly codified in the JFPA...." *Id.* at *8. The New York anti-fax statute poses no similar obstacle.

■ Because § 396–aa applies to all unsolicited faxes, whether interstate or intrastate, and because it is not preempted by the TCPA, the plaintiff's cause of action does not fail as a matter of law as the defendant contends. When the Court, as it must, draws all reasonable inferences from the available evidence in favor of the non-movant, factual disputes are revealed as to whether there was an EBR between the parties and whether Gottlieb had requested that Carnival cease sending him faxes. Those disputes preclude granting either party's motion for summary judgment.

### CONCLUSION

In sum, the Court has **GRANTED** the defendant's motion to reconsider the Court's ruling that it had jurisdiction to invalidate the FCC regulation providing for an EBR exemption. The Court did not have jurisdiction to invalidate it. Having reconsidered the motions for summary judgment of the TCPA claim, the Court holds that, because there are disputes as to the material facts, those motions are **DENIED.**

The Court also has **GRANTED** the motions to reconsider the Court's order dismissing the plaintiff's N.Y. Gen. Bus. Law § 396–aa claim. Having reconsidered the motions for summary judgment of that claim, the Court similarly concludes that factual disputes exist. The motions for summary judgment of that claim are **DENIED.**

**SO ORDERED.**